1  ROBERT M. YASPAN, SBN 051867
   JOSEPH G. McCARTY, SBN 151020
2  DEBRA R. BRAND, SBN 162285
   LAW OFFICES OF ROBERT M. YASPAN
3  21700 Oxnard Street, Suite 1750
   Woodland Hills, California 91367
4  Telephone: (818) 905-7711
   Facsimile: (818) 501-7711
5
6  *[Proposed] General Counsel for Debtor-in-Possession*
7
8               UNITED STATES BANKRUPTCY COURT
9        CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION
10
11 IN RE:                          ) Chapter No.: 11
                                   )
12 BIODATA MEDICAL LABORATORIES,   ) Case No.: 6:16-bk-20446-MW
   INC.                            )
13                                 ) Adv. No.:
                 Debtor            )
14                                 ) COMPLAINT FOR:
                                   )
15 BIODATA MEDICAL LABORATORIES,   )  1. DECLARATORY RELIEF;
   INC.                            )
16                                 )  2. DECLARATORY RELIEF;
                 Plaintiff.        )  3. AVOIDANCE OF PREFERENTIAL
17                                 )     TRANSFERS PURSUANT TO 11 U.S.C
                                   )     SECTION 547;
18         vs.                     )  4. AVOIDANCE OF LIEN AND
                                   )     EQUITABLE SUBORDINATION
19 PEARL BETA FUNDING, LLC ; and   )     PURSUANT TO 11 U.S.C SECTION
   MERCHANT SOURCE, INC.           )     510(c);
20                                 )  5. AVOIDANCE AND PRESERVATION
                 Defendants.       )     OF CLAIMS PURSUANT TO 11 U.S.C
21                                 )     SECTIONS 502, 506, 544, AND 510(c);
                                   )  6. AVOIDANCE OF FRAUDULENT
22                                 )     TRANSFER PURSUANT TO 11 U.S.C
                                   )     SECTION 548 ;
23                                 )  7. AVOIDANCE OF FRAUDULANT
                                   )     TRANSFERS PURSUANT TO 11 U.S.C
24                                 )     SECTION 544 AND 548;
                                   )  8. USURY AND UNJUST
25                                 )     ENRICHMENT/DISGORGEMENT;
                                   )  9. INJUNCTION;
26                                 ) 10. DETERMINING EXTENT OF LIENS
                                   )     PURSUANT TO 11 U.S.C SECTION
27
28

                              1

502, 506  AND 551;

11. DISALLOWANCE OF CLAIM
    PURSUANT TO 11 U.S.C SECTION
    502, 506,  AND 551 ;

12. VACATING CONFESSION OF
    JUDGMENT;

13. UNCONSCIONABILITY;

14. VIOLATION OF N.Y. GENERAL
    BUSINESS LAW SECTION 349;

15. VIOLATION OF CALIFORNIA
    BUSINESS AND PROFESSIONS CODE,
    SECTION 17200;

16. FRAUD;

17. NEGLIGENCE PER SE – VIOLATION
    OF  CALIFORNIA FINANCE LENDING
    LAW

Plaintiff BioData Medical Laboratories, Inc., the Chapter 11 debtor and debtor in possession herein (the "Debtor" or "Plaintiff"), alleges as follows:

## JURISDICTION

1.      This Court has jurisdiction under 28 U.S.C. sections 157 and 1334(b)  and 11 U.S.C. sections 105 and 506 of the subject matter of Plaintiffs' claims for relief in this adversary proceeding.  The claims for relief arise under Title 11 of the United States Code and are related to Plaintiff's Chapter 11 case pending under Title 11 in the United States Bankruptcy Court for the Central District of California.

2.      This is a core proceeding under 28 U.S.C. section 157(b).  Regardless of whether this is a core proceeding, consent is hereby given for the entry of final orders and judgments by the Bankruptcy Court.

3.      Pursuant to 28 U.S.C. section 1409, venue is proper in the Central District of California because Plaintiff's Chapter 11 Bankruptcy case is pending in this district and division.  The solicitation and execution of the loan agreements at issue herein took place in California.  As set forth below, the loan agreements were 'contracts of adhesion' and Plaintiff

did not have any opportunity to effectively negotiate regarding the terms of the loan agreements. The alleged "Confession of Judgment" and the usurious nature of the loans at issue are contrary to important public policy of the State of California thereby vitiating any alleged choice of law and choice of forum set forth in the documents. Furthermore, the issues regarding the alleged loan agreement and related matter are similarly addressed under the law of the State of California and New York and the ultimate ruling of the court should not be significantly affected by any choice of law issues.

## **PARTIES**

4.      Bio-Data Medical Laboratories, Inc. ("Bio-Data" or "Plaintiff") is a California corporation, operating as Debtors-In-Possession under the United States Bankruptcy Code ("Code") with certain powers of a trustee as specified in the Code.

5.      Defendant Pearl Beta Funding, LLC ("PEARL 2") is a Delaware limited liability company which, Plaintiff is informed and believes and thereupon alleges, maintains its principal place of business in the State of New York, but does business throughout the State of California, including but not limited to, in the County of Riverside, State of California. Plaintiff is informed and believes, and thereupon alleges, that Pearl is either a successor in interest to, or the same company as, "Pearl Capital Rivas Ventures" ("PEARL 1"). PEARL 1 and PEARL2 are jointly and severally referred to herein as "Pearl".

6.      Defendant, Merchant Source, Inc. ("MSI") is a corporation which, Plaintiff is informed and believes and thereupon alleges, maintains its principal place of business in the State of New York, but does business throughout the State of California, including but not limited to, in the County of Riverside, State of California.

7.      On November 28, 2016 (the "Petition Date"), Plaintiff commenced its reorganization by filing a voluntary petition for relief under chapter 11 of title 11 of the United

1   States Code (the "Bankruptcy Code").

2       8.      Plaintiff is continuing in possession of its assets and is operating and managing

3   its business as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy

4   Code.

5       9.      Plaintiff owns and operates a medical testing business that provides medical test

6   services for insurance and government entity health providers with over 18 branches , as of the

7   Petition Date, located in several areas of California.  Prior to 2013, Debtor was profitable and

8   had a positive cash flow.

9

10      10.     In or about 2013, Plaintiff fell victim to a series of predatory lenders that used

11  fraudulent, illegal, deceptive, and/or unethical means to defraud and deceive Plaintiff into

12  entering into a series of fraudulent, illegal and usurious loans.  Said predatory lenders tricked

13  Plaintiff into signing fraudulent, false, and misleading documents, thereby causing Plaintiff to

14  enter into unfair and usurious loans which further depleted Plaintiff's  financial condition.

15      11.     Pearl is one such predatory lender.  It specializes in providing fast, high interest,

16  loans to troubled businesses and is one of many entities that engage in the making of "cash

17  advance" loans that are sometimes referred to as "merchant cash advances ("MCA").   MSI is

18  also involved in the MCA business and is also a broker and/or lender in the transactions.  Pearl

19  and MSI will sometimes hereinafter be referred to collectively as "Defendants").

20  **Predatory Lending and the Merchant Cash Advance Loan Business**

21      12.     Over the last decade the MCA business has emerged as a very high interest

22  lending scheme targeting cash short small businesses and has become one of the major suppliers

23  of credit to small businesses.  Plaintiff is informed and believes, and thereupon alleges, that the

24  MCA developed as a supposedly quick and dirty attempt to get around the regulations for

25  traditional factoring financing and usury laws.

26      13.     Plaintiff is informed and believes, and thereupon alleges, that MCA lenders send

out mass mailers to small businesses and rely on high pressure phone sales tactics to close the loans.

14.    The loans are marketed as a way for a borrower to obtain quick money with, what initially appears to be, relatively small payments.  However, these payments are collected on a daily basis by automatic Electronic Fund Transfers or Automated Clearing House debits (together, "EFT") and the relatively small daily payments become large monthly payments and a severe drag on the business' cash flow.

15.    In a typical transaction the borrowers, loan officers and the lenders never meet.  The paperwork exchange is minimal.  The lenders count on the fact that the borrowers are desperate for money and do not have the time to seek other, and cheaper, forms of financing.

16.    MCA lenders prey on vulnerable businesses that need cash quickly and/or not sophisticated enough to understand the true nature of the MCA business.  The cumulative effect of the daily automatic EFT payments exacerbates a company's cash flow issues.

17.    The loan application and approval takes place on the phone.  Most of the documents created by the MCA lender are not seen by the borrower until very shortly before funding and they are not explained to the borrower or the borrower's principals.

18.    The issues with the loans are numerous and include, without limitation:

A.    Although, the transactions are proposed as a loan – i.e. a 'cash advance', the documentation attempts to construe the transaction as an alleged 'sale' of a portion of a company's future 'receipts' or 'proceeds'.

B.    The form of the transaction bears a surface resemblance to "factoring" arrangements" wherein specific accounts receivable are sold to a factor.  However, here there is no documentation relating to the sale to the alleged assignee.  The "seller" (or "borrower") continues to have title to the receivable's proceeds, collects the proceeds itself, and continues to bill the customer directly.

C.      There is no evidence of any transfer of title (or "sale") of, or to, anything. Nor is there any change in possession to the assets allegedly being "sold".

D.      While the payments are, in the documentation, allegedly tied to the amount of the proceeds of the accounts receivable that are collected on a daily business, the payments are taken from the business' checking account on a daily basis are the same amount regardless of the presence or absence of 'receipts' or 'proceeds' in the account on that day. There is no "fact-checking" by Pearl to determine that what is being taken is indeed what has been allegedly "sold".

E.      The lender does not assume any of the ordinary risks of loss that comes with the ownership of "account receivable proceeds" as would, for example, occur in a typical "factoring" arrangement. The "risk of loss", i.e., nonpayment of the future accounts receivable, remains with the Plaintiff.

F.      The loan documentation include 'broad form' security agreements that are similar to the documentation signed in a loan transaction, not a sale of proceeds transaction.

G.      The loans typically have guaranties that are similar to a loan transaction, not a purchase transaction. .

H.      The loans typically require the borrower and the guarantors to execute a confession of judgment prior to the transfer of the monies in an unknown amount that does not make any sense in a "purchase" context since the MCA lender supposedly already owns the 'receipts' or 'proceeds'. Instead, the guarantees, agreement, and confession of judgment together make the transaction function exactly the same as a 'full recourse' loan.

I.      The default provision typically have non-payment as a default which does not make any sense regarding an alleged sale transaction since the MCA lender supposedly owns the asset and are more typical for loans.

J.      There is no attempt to separate the alleged portion of the borrower's

'receipts' or 'proceeds' that supposedly belongs to the lender and there is no separate bank account to hold the assets allegedly being sold.

K.    The loans are typically usurious with interest rates ranging into the hundreds of percent on an annual percentage rate ("APR") basis.

L.    There are no TILA and Regulation Z disclosures as required by Federal law.

M.    There are no informational disclosures as required by California law.

N.    The lenders typically rely on the fiction that the transaction is a sale rather than a loan and do not register as a finance lender as is required in the State of California.

O.    The loan documentation and funding are provided with no real opportunity for review or negotiation – i.e. are contracts of adhesion.

P.    The business and tax records of the Plaintiff reflect a loan transaction rather than a sale under the standards of the Financial Accounting Standards Board.

Q.    If the transaction is indeed a purchase and sale of accounts receivable and the other assets referred to in the UCC-1s that are allegedly filed, the ""purchaser" should have paid sales tax to the State of California, and the "seller" should have recorded the transaction as a sale on its federal and state income tax returns.  However, neither has occurred; a fact more in common with a loan transaction than a purchase transaction.

19.    These numerous issues would ordinarily make the MCA loans subject to challenge as being fraudulent, usurious, illegal, deceptive, predatory, and/or unethical transactions that are not enforceable.   However, the MCA lenders rely on the financial weakness and naivety of the borrowers and the use of highly questionable legal tactics, including, without limitation, confessions of judgments and individual guaranties to assert their highly questionable legal fiction of ownership.  As such, many, if not most of the businesses end up going out of business and/or are not able to protect their rights.  The MCA lenders then use

their grossly unfair and obscene profits in a sort of reverse *Ponzi* scheme to make more loans to other susceptible business owners. As such, the business has seen rapid growth over the last few years.

20.    The Debtor is one of the many victims of this pervasive scam and scheme. Pearl is such an MCA lender.

**The Pearl Loans**

21.    In or about December 2014, Plaintiff took out its first loan from Pearl ("2014 Pearl Loan"). During the discussion regarding the 2014 Pearl Loan, among other material misrepresentations, Pearl represented as follows:

A.    That it was a lender which was licensed to make loans in the State of California;

B.    That the transaction would be a loan of $210,000 which would all be paid to Plaintiff at the close of the loan;

C.    That the proposed loan would earn interest at less than the legal rate and that the payments could be made from Plaintiff's cash flow without interfering with Plaintiff's ability to do business:

D.    That daily payment amount would not exceed the lower of $2,450 or 15% of Plaintiff's receipts from its accounts receivable for that day;

E.    The interest rate on the loan would not exceed 10% per year and was a legal rate;

F.    Pearl failed to state the actual interest rate on the loan and failed to make federal and state mandated disclosures regarding the loans; and

G.    Pearl represented that the loan complied with all applicable laws. Plaintiff relied on these representations and agreed to take out the 2014 Pearl Loan.

22.    The Debtor dealt with both Pearl and Merchant Source, Inc. ("MSI"), a company that was an agent of Pearl regarding the 2016 Pearl Loan. During the discussion regarding the 2016 Pearl Loan, Pearl and MSI represented as follows:

A.      That Pearl was a lender which was licensed to make loans in the State of California;

B.      That the transaction would be a loan of $120,000 which would all be paid to Plaintiff at the close of the loans;

C.      That the proposed loans would earn interest at less than the legal rate and that the payments could be made from Plaintiff's cash flow without interfering with Plaintiff's ability to do business:

D.      That daily payment amount would not exceed the lower of $1,399 or 15% of Plaintiff's receipts from its accounts receivable for that day;

E.      The interest rate on the loan would not exceed 10% per year and was a legal rate;

F.      They failed to state the actual interest rate on the loan and failed to make federal and state mandated disclosures regarding the loans; and

G.      Represented that the loan complied with all applicable laws.

23.      Although the agreements documenting the 2014 Pearl Loan and 2016 Pearl Loan (collectively the "Pearl Loans") assert that the transactions involved the purchase of 'receipts' or 'proceeds', each transaction, when viewed in its totality, is a loan transaction.  At all relevant times, Plaintiff considered the transactions to be short-term business loans.  At no point, did Plaintiff ever seek to sell an interest in its accounts receivable, receipts, or proceeds. Plaintiff is informed and believes, and thereupon alleges, that Pearl and MSI did not underwrite the transactions based on the collectability risk of Plaintiff's customers or their ability to pay.

24.      Rather, the form of the transactions was dictated solely by Pearl and MSI with the intent to disguise the true nature of the transaction.  The breaches of the representations of Pearl and MSI and other issues with the Pearl Loans are numerous and include, without limitation:

A.      Although, the transactions was proposed by Pearl and MSI as a loan, the

documentation attempts to construe the transaction as an alleged 'sale' of a portion of a company's future 'receipts';

B.    There was no transfer of title to any alleged 'receipts';

C.    The payments are made on a daily basis in the same amount regardless of the 'receipts' or 'proceeds' for that day;

D.    Pearl did not assume any of the ordinary risks of loss that comes with ownership of the future accounts receivable.

E.    The Pearl Loan includes an alleged 'broad form' security agreement that is inconsistent with ownership of any alleged 'receipts even though Pearl did not file any "notice" with the State of California (such as a UCC-1 form filing would give).

F.    The 2014 Pearl Loan includes an alleged guaranty that is inconsistent with the contention that the transaction was a purchase and sale of any alleged future 'receipts;

G.    Pearl Loans required Plaintiff to execute a confession of judgment which is inconsistent with ownership of any alleged 'receipts' and makes the transaction an alleged 'full recourse' loan.

H.    The loan documents, in general, do not use the term loan but are inconsistent with an alleged sale of 'receipts';

I.    The default provision in the loan documents makes non-payment a default which is inconsistent with an alleged sale of 'receipts';

J.    The loan documents do not attempt to separate the alleged portion of the borrower's 'receipts' or 'proceeds' that supposedly belongs to Pearl and there is no separate bank account for the alleged 'receipts" belonging to Pearl;

K.    The Pearl Loans are usurious under both California and New York law and the high costs of the loan caused the balance transferred to Plaintiff to substantially less than the amount promised;

L.    Pearl does not qualify as a finance lender in California; and

M.    The loan documentation and funding were provided with no real opportunity for review or negotiation – i.e. are contracts of adhesion.

N.    The business and accounting records of both Plaintiff and Pearl treated the transaction as a loan under the standards of the Financial Accounting Standards Board.

25.    Plaintiff and its owners were not represented by counsel at the time the loan documents were executed. They did not understand the documents at the time they were sent to them and they did not have time to review them and/or have an attorney review them. As a result, Plaintiff, its owners, and other alleged third parties entered into alleged guaranties (the "Guaranties") and an alleged confession of judgment (the "Confession of Judgment") with regard to the transaction. Additionally, onerous costs, fees and alleged penalties were included with the documents that were not previously discussed, were usurious, and were not in compliance with applicable law.

26.    Because of the representations made by Defendants and the immediate need for the funds, Plaintiff and its owners executed the loan documents without question and without adequate review. Defendants did not give Plaintiff any opportunity to discuss, object, or propose changes to the alleged documents. At the time the documents were executed, Plaintiff believed that it was executing a simple loan transaction and would not have executed a document that purportedly allowed Pearl to enter judgment against Plaintiff without a trial and opportunity to a defense in court.

27.    The documents that were signed did not list any accounts that were purportedly the subject of the sale. Nor did Defendants ever contact any of Plaintiff's customers to investigate or assess their ability to pay, or to demand direct payment (as would a factor, for instance). There was also no effective transfer of ownership of any 'receipts, proceeds, or the accounts receivables to Defendants as a consequence of any alleged sale, ownership of the

'receipts', 'proceeds' and receivables remained with Plantiff.  The document did not mention

or attempt to transfer any risk.  The approval of the Pearl Loan was not based on any risk

assessment of any particular account receivable.   The business and accounting records of both

Plaintiff and Pearl treated the transaction as a loan under the standards of the Financial

Accounting Standards Board.

28.    The loan documents made the payment of the daily specified amounts as an

unconditional requirement regardless of whether Plaintiff had recovered receivables sufficient

to cover that amount.  Moreover, Pearl did not actively attempt to collect on any of these

alleged receivables directly from Plaintiff's customers.  Instead, they simply took the loan

repayment amounts directly from Plaintiff's business accounts without regard to how those

amounts were generated.  In fact, in order to repay the daily specified amounts, Plaintiff was

required to go out and obtain additional loans that had nothing to do with customer receivables.

Plaintiff is informed and believes, and thereupon alleges, that these additional loan funds were

taken by Pearl knowing that they were not the product or proceed of any customer receivables.

29.    The first loan from Pearl beginning in or about December 2014 (the "2014 Pearl

Loan").  The loan amount was stated to be $210,000.   The loan was disguised in the form of a

purchase of 15% of Plaintiff's 'receipts' with a total amount of $294,000 in  120 equal

installments of $2,450 resulting in an aggregate payment of $94,000 in interest.  The loan was

disguised in the form of a purchase of Plaintiff's 'proceeds' under a "Merchant Agreement."  In

reality, Pearl agreed to loan Plaintiff the sum of $210,000 payable in 120 equal installments of

$2,450 resulting in an aggregate payment of $294,000.  The APR was, at least, 192%.  Plaintiff

paid Pearl additional fees in an amount in excess of $18,000 which further increases the APR

of the Loan in excess of 192%.  The loan included a 'broad form' security agreement.

However, there is no UCC-1 Financing Statement that identifies Pearl as the Creditor and Pearl

has not responded to a request for any UCC-1 Financing Statement that relates to this loan.

30.     The second loan from Pearl was taken in June 2016 (the "2016 Pearl Loan"). The loan amount was stated to be $112,671.   The loan was disguised in the form of a purchase of 15% of Plaintiff's 'receipts' with a total amount of $167,880 in 120 equal installments of $1,399 resulting in an aggregate payment of $55,209 in interest.  The loan was disguised in the form of a purchase of Plaintiff's 'proceeds' under a "Merchant Agreement."  In reality, Pearl areed to loan Plaintiff the sum of $112,671 payable in 120 equal installments of $1,399 resulting in an aggregate payment of $167,880.  The APR was, at least, 210%.  Plaintiff paid Pearl additional fees of  which further increases the effective interest rate of the Loan in excess of 210%.  The loan included a 'broad form' security agreement.   However, there is no UCC-1 Financing Statement that identifies Pearl as the Creditor.

31.     Just prior to the bankruptcy filing, Pearl filed and obtained a Judgment by Confession on or about November 25, 2016 (the "Confession of Judgment") and then immediately instituted actions to seize bank accounts of Plaintiff and its owners at Bank of America with, at least, one account belonging to one of Plantiff's owners, Henry Wallach, being frozen.

**Validity, Amount and Security of Alleged MCA Claims**

32.     The present estimated amount of total alleged secured claimants in Plaintiff's Bankruptcy is in excess of $2,900,000.  Plaintiff has not presently been able to determine the alleged amounts, the alleged security, or the alleged priority of a number of the alleged creditors due to the filings by alleged "representatives" that disguise the true name of any creditor.  There are also approximately 40  UCC-1 Financing Statements that have been recorded. There are currently three MCA creditors, Merchant Cash and Collateral ("MCC"), Pearl and Yellowstone Capital West, LLC ("Yellowstone"), that apparently claim to be either secured creditors of the Debtor or the owner of a portion of the Debtor's future accounts receivable.

33.    Plaintiff's assets currently consists mostly of its accounts receivable which currently total an amount in excess of $2.9 million with an estimated fair market value of at least $2.1 million  Plaintiff contends that the three MCA creditors (including Pearl) do not have perfected security interests and/or are unsecured or under-secured because of senior liens and/or failure to perfect any alleged lien.

34.    Even though the loan documentation for the Pearl Loans provided for an alleged security interest, there is no evidence in the record that any UCC-1's were filed.  In fact, the documents fail to grant any security interest at all since they fail to adequately identify and/or segregate the alleged 'Future Sale Proceeds'.  No specific 'proceeds' are identified and there is not even a separate account for any alleged  'Future Sale Proceeds' that supposedly belong to Pearl.

**FIRST CLAIM FOR RELIEF**
(Declaratory Relief re Nature of Transaction, Validity, Priority, Amount, and Extent of Lien –
2014 Pearl Loan against Defendant Pearl)

35.    Plaintiffs hereby incorporate by reference paragraphs 1 through 34 inclusive, as if fully set forth herein.

36.    The issues with the Pearl 2014 Loan are numerous and include, without limitation:

A.    Although, the transaction was proposed by Pearl as a loan, the documentation attempts to picture the transaction as an alleged 'sale' of a portion of a company's future 'receipts';

B.    There was no transfer of title or transfer of possession to any alleged 'receipts';

C.    The payments are made on a daily basis in the same amount regardless of the 'receipts' or 'proceeds' for that day;

D.    Pearl did not assume any of the ordinary risks of loss that comes with ownership.

E.    The loan includes an alleged 'broad form' security agreement that is inconsistent

14

with ownership of any alleged 'receipts;

F.      The loan included an alleged guaranty that is inconsistent with ownership of any alleged 'receipts;

G.      The loan required Plaintiff to execute a confession of judgment which is inconsistent with ownership of any alleged 'receipts' and makes the transaction an alleged 'full recourse' loan.

H.      The loan documents, in general, do not use the term loan but are inconsistent with an alleged sale of 'receipts';

I.      The default provision in the loan document makes non-payment a default which is inconsistent with an alleged sale of 'receipts';

J.      The loan documents do not attempt to separate the alleged portion of the borrower's 'receipts' or 'proceeds' that supposedly belongs to Pearl and there is no separate bank account for the alleged 'receipts" belonging to Pearl;

K.      The loan is usurious under both California and New York law and the high costs of the loan caused the balance transferred to Plaintiff to substantially less than the amount promised;

L.      Pearl does not qualify as a finance lender in California;

M.      The loan documentation and funding were provided with no real opportunity for review or negotiation – i.e. are contracts of adhesion;  and

N.      The business and accounting records of both Plaintiff and Pearl treated the transaction as a loan under the standards of the Financial Accounting Standards Board.

37.     Plaintiff contends that the transaction was actually a loan; that the loan was usurious under either California New York law, or both; that the payments under the transactions were avoidable preferences and/or fraudulent transfers.  Plaintiff further contends

that it did not "sell" any assets to Pearl, and that it merely borrowed money from Pearl.

Plaintiff finally contends that Pearl is at best an unsecured general creditor of the Debtor.

38.     Plaintiff is informed and believes that Pearl disputes Plaintiff's contentions set forth above and Plaintiff desires a judicial determination of its rights and duties and a declaration as to the nature of the transaction, and the parties' rights and duties thereunder.

39.     A judicial declaration is necessary and appropriate at this time under the circumstances in order to determine the rights and duties of the parties relating to the 2014 Pearl Loan as follows:

A.     That the agreement entered into between Plaintiffs and Defendants sets forth a loan transaction to which California and New York usury laws are applicable.

B.     That the 2014 Pearl Loan charges a usurious interest rate in both California and New York.

C.     That Plaintiff and Pearl entered into a loan transaction and that Pearl does not own and has not acquired any alleged 'receipts' and/or or any other personal property from Plaintiff.

D.     That Pearl knowingly charged a criminally usurious rate of interest on the 2014 Pearl Loan and entered into the loans with usurious intent.

E.     That the 2014 Pearl Loan is usurious per se.

F.     That the 2014 Pearl Loan and the payments thereon are avoidable preferences and/or fraudulent transfers under the Bankruptcy Code.

G.     That the 2014 Pearl Loan is void ab initio as criminally usurious and, therefore, Defendants are precluded from recovering any remaining installments due under the loans and must repay all payments made to date and that all documents and collateral be cancelled and surrendered.

## SECOND CLAIM FOR RELIEF

(Declaratory Relief Nature of Transaction, Validity, Priority, Amount, and Extent of Lien –
2016 Pearl Loan against Defendant Pearl)

40.    Plaintiffs hereby incorporate by reference paragraphs 1 through 39, inclusive, as fully set forth herein.

41.    Plaintiff contends that Pearl does not have a perfected security interest in any of the Debtor's assets and/or are unsecured or under-secured because of senior liens.  The issues with the Pearl 2016 Loan are numerous and include, without limitation:

A.    Although, the transaction was proposed by Pearl as a loan, the documentation attempts to construe the transaction as an alleged 'sale' of a portion of a company's 'receipts';

B.    There was no transfer of title to any alleged 'receipts';

C.    The payments are made on a daily basis in the same amount regardless of the 'receipts' or 'proceeds' for that day;

D.    Pearl did not assume any of the ordinary risks of loss that comes with ownership.

E.    The loan includes an alleged 'broad form' security agreement that is inconsistent with ownership of any alleged 'receipts;

F.    The loan included an alleged guaranty that is inconsistent with ownership of any alleged 'receipts;

G.    The loan required Plaintiff to execute a confession of judgment which is inconsistent with ownership of any alleged 'receipts' and makes the transaction an alleged 'full recourse' loan.

H.    The loan documents, in general, do not use the term loan but are inconsistent with an alleged sale of 'receipts';

I.    The default provision in the loan document makes non-payment a default which is inconsistent with an alleged sale of 'receipts';

J.      The loan documents do not attempt to separate the alleged portion of the borrower's 'receipts' or 'proceeds' that supposedly belongs to Pearl and there is no separate bank account for the alleged 'receipts" belonging to Pearl;

K.      The loan is usurious under both California and New York law and the high costs of the loan caused the balance transferred to Plaintiff to substantially less than the amount promised;

L.      Pearl does not qualify as a finance lender in California;

M.      The loan documentation and funding were provided with no real opportunity for review or negotiation – i.e. are contracts of adhesion;  and

N.      The business and accounting records of both Plaintiff and Pearl treated the transaction as a loan under the standards of the Financial Accounting Standards Board.

42.      Plaintiff contends that the transaction was actually a loan; that the loan was usurious under either California New York law, or both; that the payments under the transactions were avoidable preferences and/or fraudulent transfers.  Plaintiff further contends that it did not "sell" any assets to Pearl, and that it merely borrowed money from Pearl. Plaintiff finally contends that Pearl is at best an unsecured general creditor of the Debtor.

43.      Plaintiff is informed and believes that Pearl disputes Plaintiff's contentions set forth above and Plaintiff desires a judicial determination of its rights and duties and a declaration as to the nature of the transaction, and the parties' rights and duties thereunder.

44.      A judicial declaration is necessary and appropriate at this time under the circumstances in order to determine the rights and duties of the parties relating to the 2016 Pearl Loan as follows:

A.      That the agreement entered into between Plaintiffs and Defendants sets forth a collateralized loan transaction to which California and New York usury laws are applicable.

B.     That the 2016 Pearl Loan charges a usurious interest rate in both California and New York.

C.     That Plaintiff and Pearl entered into a loan transaction and that Pearl does not own and has not acquired any alleged 'receipts' and/or or any other personal property from Plaintiff.

D.     That Pearl knowingly charged a criminally usurious rate of interest on the 2016 Pearl Loan and entered into the loans with usurious intent.

E.     That the 2016 Pearl Loan is usurious per se.

F.     That the 2016 Pearl Loan and the payments thereon are avoidable preferences and/or fraudulent transfers under the Bankruptcy Code.

G.     That the 2016 Pearl Loan is void ab initio as criminally usurious and, therefore, Defendants are precluded from recovering any remaining installments due under the loans and must repay all payments made to date and that all documents and collateral be cancelled and surrendered.

45.     An actual controversy exists between the parties as to the validity, priority, and extent of the validity, amount , and security on the 2016 Pearl Loan.

46.     Pearl did not file a valid UCC Financing Statement against Plaintiff and did not have the right to file a UCC Financing Statement against Plaintiff since it did not grant any security to Pearl.

47.     Plaintiff is entitled to a determination pursuant to 11 U.S.C. §506 of the validity, priority, amount, and extent of the alleged security interest with regard to the 2016 Pearl Loan.

48.     Plaintiff further requests that to the extent a secured claim is avoided, the amount of the claim in excess of any allowed secured claim be preserved for the benefit of unsecured creditors pursuant to 11 U.S.C. Section 551.

**THIRD CLAIM FOR RELIEF**
(Avoidance of Preferential Transfers against Defendant Pearl)
(11 USC Section 547)

49.    Plaintiffs hereby incorporate by reference paragraphs 1 through 48, inclusive, as if fully set forth herein.

50.    Pearl made or received transfers in an amount to be proven of Plaintiffs' assets for or on account of antecedent debt claimed to be owed by Plaintiffs to Pearl within 90 days of the date of the filing of Plaintiff's Bankruptcy case.  Plaintiffs are informed and believe and thereupon allege that Pearl improved its position vis-à-vis Plaintiffs in an amount in excess of $50,000 within 90 days of the filing date.

51.    Such transfers were made at a time when Plaintiffs were insolvent and/or the transfers rendered Plaintiff insolvent

52.    As a result of such transfers, Pearl received more than it would have received if (a) Debtors' cases were cases under Chapter 7 of the Code; (b) the transfers had not been made; and (c) Pearl received payment of such debt to the extent provided by the Code. The alleged transfers are equally avoidable regardless of whether they are alleged sales of 'proceeds' or loans.

53.    The transfers to Defendants should be avoided pursuant to section 547 of the Bankruptcy Code.

**FOURTH CLAIM FOR RELIEF**
(Avoidance of Lien and Equitable Subordination against Defendant Pearl)
(11 U.S.C. Section 510(c))

54.    Plaintiffs hereby incorporate by reference paragraphs 1 through 53, inclusive, as if fully set forth herein.

55.    Pearl's claim of debt (approximately $100,000, plus or minus, and subject to proof) are allegedly secured by: (a) a security agreement, or agreements; and (b) an alleged UCC-1 financing statement that allegedly grants a 'broad form security in most if not all of Plaintiff's assets.

56. The actions of Pearl described above have harmed the bankruptcy estate of Debtor and were inequitable and unjust in nature. The alleged transfers are equally avoidable regardless of whether they are alleged sales of 'proceeds' or loans.

57. As a usurious lender that committed wrongful and illegal acts to unjustly and unduly took advantage of Plaintiff and/or as an alleged purchaser of Plaintiff's assets through fraudulent transfers, Pearl's alleged right to payment from Plaintiff's Bankruptcy Estate, if any exists, should be subordinated for purposes of distribution under principles of equitable subordination pursuant to section 510(c)(1) of the Code, and any claims of lien should be avoided and preserved for the benefit of unsecured creditors pursuant to section 510(c)(2) of the Code.

**FIFTH CLAIM FOR RELIEF**
(Avoidance and Preservation of Lien Claims against Defendant Pearl)
(11 U.S.C. Sections 502, 506, 544, and 510(c))

58. Plaintiffs hereby incorporate by reference paragraphs 1 through 57, inclusive, as if fully set forth herein.

59. Plaintiffs are informed and believe and thereupon allege that Pearls's claims are unsecured due to the fact that there are certain superior liens upon Plaintiffs' assets to those of Pearl that completely encumber the fair market value of those assets. As a usurious lender and/or the transferee in a fraudulent transfer of Plaintiff's assets that committed wrongful and illegal acts to unjustly and unduly took advantage of Plaintiff, Pearl's alleged right to payment from Plaintiff's Bankruptcy Estate, if any exists, should be subordinated for purposes of distribution under principles of equitable subordination.

60. Pearl's failure to perfect its lien and file a UCC Financing Statement makes its alleged security interest avoidable. The alleged transfers are equally avoidable regardless of whether they are alleged sales of 'proceeds' or loans.

61. Pearl's claim of ownership of any assets belonging to Plaintiff is wrongful and void as set forth above. The Pearl Loans and alleged loans and/or purchases and/or payments there-under were avoidable preferences and/or fraudulent transfers. The alleged transfers are equally avoidable regardless of whether they are alleged sales of 'proceeds' or loans.

62.     Pearls's liens allegedly securing its subordinated claims and alleged claims of ownership of Plaintiff's assets and the Pearl Loans should be avoided, preserved and transferred to Plaintiffs' estates pursuant to section 510(c)(2) of the Code.

### SIXTH CLAIM FOR RELIEF
(Avoidance of Fraudulent Transfers against Defendant Pearl)
(11 U.S.C. Section 548)

63.     Plaintiffs hereby incorporate by reference paragraphs 1 through 62, inclusive, as fully set forth herein.

64.     Pearl made or received transfers in an amount to be proven of Plaintiffs' assets for less than reasonably equivalent value within 2 years of the date of the filing of Plaintiff's Bankruptcy case.  These transfers include, without limitation, the Pearl Loans, the alleged security granted under the Pearl Loans and all payment made there-under and/or the alleged sale of Plaintiff's assets for less than equivalent value.  The alleged transfers are equally avoidable regardless of whether they are alleged sales of 'proceeds' or loans.

65.     Such transfers were made at a time when Plaintiff was insolvent and/or rendered Plaintiff insolvent.

66.     The transfers to Defendants should be avoided pursuant to Section 548 of the Bankruptcy Code.

### SEVENTH CLAIM FOR RELIEF
(Avoidance of Fraudulent Transfers against Defendant Pearl)
(11 U.S.C. Sections 544 and 548)

67.     Plaintiffs hereby incorporate by reference paragraphs 1 through 66, inclusive, as fully set forth herein.

68.     Pearl made or received transfers in an amount to be proven of Plaintiffs' assets for less than reasonably equivalent value within 4 years of the date of the filing of Plaintiff's Bankruptcy case.  These transfers include, without limitation, the Pearl Loans, the alleged security granted under the Pearl Loans and all payment made there-under and/or the alleged sale

of Plaintiff's assets for less than equivalent value.  The alleged transfers are equally avoidable regardless of whether they are alleged sales of 'proceeds' or loans.

69.    Such transfers were made at a time when Plaintiff was insolvent and/or rendered Plaintiff insolvent.

70.    The transfers to Defendants should be avoided pursuant to Section 544 and 548 of the Bankruptcy Code.

## EIGHTH CLAIM FOR RELIEF
(Usury and Unjust Enrichment/Disgorgement against Defendant Pearl and MSI)

71.    Plaintiffs repeat and re-allege the allegations of each of the foregoing paragraphs 1 through 70 of this Complaint as if fully set forth herein.

72.    Each of the Pearl Loans set forth a collateralized loan transaction to which California and New York usury laws are applicable.

73.    The loans charge a criminally usurious interest rate under New York law exceeding 25%.

74.    The loans charge an interest rate usurious under applicable California law.

75.    Plaintiffs, MSI, and Pearl intended to enter into a loan transaction for each of the agreements at issue.

76.    The loans are usurious per se.

77.    Pearl and MSI were unjustly enriched by receiving payment of principle and interest in connection with the criminally usurious loans.

78.    Equity and public policy dictate that Pearl and MSI should not be allowed to receive any amounts paid in connection with the criminally usurious loans.

79.    Plaintiffs seek an order from this Court, declaring the each of the agreements entered into between Plaintiff and Pearl as a loan transaction, and thus, void ab initio under New York law because they charge a criminally usurious interest rate in excess of 25%;

ordering Defendants to repay Plaintiff all principal and interest previously paid by Plaintiff to

Pearl in connection with the criminally usurious loans; and granting such other and further

relief as this Court deems just and proper, including disgorging Pearl and MSI of their ill-gotten

profits as a result of any and all similarly issued loans to other victims, and be ordered to pay

those ill-gotten profits into this Court.

### NINTH CLAIM FOR RELIEF
(Injunction against Defendant Pearl and MSI)

80.     Plaintiffs repeat and re-allege the allegations of each of the foregoing

paragraphs 1 through 79 of this Complaint as if fully set forth herein.

81.     Plaintiffs are entitled to a permanent injunction enjoining Pearl and MSI, or any

one acting in concert with them or under their control, from taking any action enforcing the

Pearl Loan agreements or any related document.

82.     Plaintiffs seek an order from this Court, granting a permanent injunction

enjoining Pearl and MSI and any one acting in concert with them or under their control, from

taking any action enforcing the Pearl Loan agreements or any related document; and vacating

the Confession of Judgment and other enforcement mechanisms in connection with the Pearl

Loan agreements; and granting such other and further relief as this Court deems just.

### TENTH CLAIM FOR RELIEF
(Value of Assets and Extent of Lien against Defendant Pearl)
(11 U.S.C. Section 502, 506 and 551)

83.     Plaintiffs hereby incorporate by reference paragraphs 1 through 82, inclusive, as

fully set forth herein.

84.     The present amount of total alleged secured claimants in Plaintiff's Bankruptcy is

in excess of $2,900,000.  Plaintiff is not presently able to determine the alleged amounts, the

alleged security, or the alleged priority of a number of the alleged creditors.  There are also

about 40 UCC-1 Financing Statements that have been recorded.  There is no evidence of any

1  UCC-1 Financing Statement filed by Pearl for the 2016 Loan.    Plaintiff contends that Pearl

2  does not have to file a UCC Financing Statement because the loan document fails to grant any

3  enforceable security to Pearl.  As such, any alleged UCC Financing Statement from Pearl would

4  be void and of no effect.

5      85.    Debtor's assets currently consist mostly of its accounts receivable which are

6  currently valued at least at $2,100,000.

7

8      86.    As such, Plaintiff contends that Pearl has, at best, an unsecured claim of lien.

9  This analysis applies even if the transaction was an alleged agreement to sell assets.  The alleged

10 claim would only be an alleged unsecured claim based upon an alleged breach agreement to sell

11 assets.

12     87.    Plaintiff is entitled to a determination pursuant to 11 U.S.C. §506 of the validity,

13 priority, amount, and extent of the alleged security interest with regard to the 2016 Pearl Loan.

14     88.    Plaintiff further requests that to the extent the secured claim is avoided, the

15 amount of the claim in excess of any allowed secured claim be preserved for the benefit of

16

17 unsecured creditors pursuant to 11 U.S.C. Section 551.

18                    **ELEVENTH CLAIM FOR RELIEF**
                    (Disallowance of Claim against Defendant Pearl)
19                      (11 U.S.C. Section 502, 506 and 551)

20

21     89.    Plaintiffs hereby incorporate by reference paragraphs 1 through 88, inclusive, as

22 fully set forth herein.

23     90.    The 2016 Pearl Loan documentation included an alleged 'broad form' security

24 agreement.  However, there is no UCC-1 Financing Statement that identifies Pearl as the

25 Creditor.  Therefore, any alleged secured claim should be disallowed.

26     91.    As a usurious lender that committed wrongful and illegal acts to unjustly and

27 unduly took advantage of Plaintiff, Pearl's alleged right to payment from this estate should be

28

1   disallowed pursuant to 11 U.S.C. Section 502 and any allowed secured claim be preserved for

2   the benefit of Plaintiff's Bankruptcy Estate pursuant to 11 U.S.C. Section 551.

3   **TWELFTH CLAIM FOR RELIEF**
    (Vacating Void Confession of Judgment against Defendant Pearl)

4

5   92.     Plaintiffs hereby incorporate by reference paragraphs 1 through 91, inclusive, as

6   fully set forth herein.

7

8   93.     The 2016 Loan was a collateralized loan transaction to which California laws

9   are applicable.  Even if California law did not apply to the entire transaction it would apply to

10  the Confession of Judgment.

11  94.     The Confession of Judgment is void and unenforceable under California law

12  since Plaintiff was not represented by an attorney at the time it was alleged to have been

13  executed and no attorney signed the document.  Additionally, the Confession of Judgment is

14  void and enforceable under New York law since, among other issues, the affidavit fails to

15  adequately set forth the right to the judgment and any alleged breaches.  Under both California

16  and New York law the Confession of Judgment is void because it was obtained through

17  misrepresentation to the court, fraud, and through in illegal usurious loan among other issues.

18

19  Furthermore, the loan documents do not provide for any right to accelerate the principal of the

20  2016 Loan based upon simple non-payment and no other alleged breach is specified.  Finally,

21  the alleged Confession of Judgment is unenforceable since it violates the usury laws of both

22  California and New York.

23  95.     Plaintiff is requesting that the Court vacate the Confession of Judgment  Nunc

24  Pro Tunc to the date of its entry.

25

26  / / /

27  / / /

28

**THIRTEENTH CLAIM FOR RELIEF**
(Unconscionability against Defendant Pearl)

96.     Plaintiffs hereby incorporate by reference paragraphs 1 through 95, inclusive, as fully set forth herein.

97.     Each of the Pearl Loan agreements entered into between Plaintiffs and Defendants sets forth a collateralized loan transaction to which Caliofrnia and New York usury laws are applicable.

98.     Plaintiffs paid interest in excess of the maximum civil usury rate of 16% under New York law or the maximum criminal usury rate of 10% under California law.

99.     The terms of the Pearl Loan agreements are unconscionable as a matter of law. This is also true if the transactions are alleged sales of 'proceeds' since, among other issues, the amount paid was grossly inadequate and the alleged enforcement terms are onerous and inadequately emphasizes in the text.

100.    Plaintiff contends that the Pearl Loans are unenforceable and is requesting the Court order that all amounts paid thereon be disgorged to Plaintiff.

**FOURTEENTH CLAIM FOR RELIEF**
(N.Y. General Business Law § 349 against Defendant Pearl and MSI)

101.    Plaintiffs hereby incorporate by reference paragraphs 1 through 100, inclusive, as fully set forth herein.

102.    Pearl and MSI conspired with and acted in concert with each other to enter into a series of criminally usurious loans with Plaintiffs.  Because of Plaintiff's lack of sophistication and Pearl and MSI's high pressure sale tactics, the loan should be considered in the same context as consumer loans.

103.    Pearl and MSI made material misrepresentations in connection with these transactions by, among other things, mischaracterizing the true nature of the transaction as set forth herein in an intentional and knowing effort to avoid the criminal usury laws.

104.    Pearl and MSI's conduct was unlawful.

105.    Pearl and MSI willfully and knowingly violated General Business Law § 349.

106.    Plaintiffs suffered damages as a direct result of Pearl and MSI's unlawful and deceptive acts.

107.    Plaintiff seeks an order, ordering Pearl and MSI to repay all interest previously paid by Plaintiffs, granting an injunction against Pearl and MSI restraining them from enforcing any of their rights under the criminally usurious loans, awarding Plaintiffs direct and consequential damages in excess of $400,000, awarding Plaintiffs treble damages, and awarding Plaintiffs their attorney's fees and costs incurred in this action.

## FIFTEENTH CLAIM FOR RELIEF
(California Business & Professions Code Section 17200 et. seq. against Defendant Pearl and MSI)

108.    Plaintiffs hereby incorporate by reference paragraphs 1 through 107, inclusive, as fully set forth herein.

109.    Pearl and MSI's conduct in inducing Plaintiffs to enter into the loans involved a series of transactions that substantially occurred within the State of California.

110.    Pearl and MSI's violations of the California Finance Lender Law, Usury law, and fraud, among other wrongful acts, constitutes a per se violation of Section 17200.

111.    Pearl and MSI conspired with and acted in concert with each other to violate Section 17200.  Pearl and MSI have engaged and continue to engage in unlawful, fraudulent unfair practices, which are substantially likely to mislead the public by violating the California Finance Lender Law by not being licensed in the State of California and purportedly loaning

monies to Plaintiffs and by violating California and New York usury law, among other

wrongful acts.

112.    The business acts and practices of Pearl and MSI are unlawful within the

meaning of the Unfair Competition Law in that the conduct of said defendants is unlawful,

unfair and/or fraudulent.

113.    The above-described unlawful, unfair and/or fraudulent business practices and

unfair competition by Pearl and MSI continue to present a threat to Plaintiffs.  Plaintiffs are

informed and believe that said defendants have systematically perpetrated deceptive and unfair

practices upon members of the public and have intentionally deceived Plaintiffs.

114.    The continuance of the aforementioned unlawful conduct constitutes a

continuing and ongoing unlawful activity prohibited by Business and Professions Code section

17200 *et seq.* and justifies the issuance of an injunction requiring Pearl and MSI to act in

accordance with California law.  All remedies are cumulative pursuant to Business and

Professions Code section 17205.

115.    Pursuant to Business and Professions Code section 17203, Plaintiffs request

restitution and/or restitutionary disgorgement all sums obtained by Pearl and MSI in violation

of Business and Professions Code section 17200 *et seq.* in an amount according to proof

including, but not limited to any payments that were made to anything other than principal.

## SIXTEENTH CLAIM FOR RELIEF

(Fraud against Defendant Pearl and MSI)

116.    Plaintiffs hereby incorporate by reference paragraphs 1 through 115, inclusive, as

if fully set forth herein.

117.    Regarding the 2014 Pearl Loan, among other material misrepresentations, Pearl

and MSI  represented as follows:

A.    That it was a lender which was licensed to make loans in the State of California;

B.     That the transaction would be a loan of $210,000 which would all be paid to Plaintiff at the close of the loans;

C.     That the proposed loans would earn interest at less than the legal rate and that the payments could be made from Plaintiff's cash flow without interfering with Plaintiff's ability to do business:

D.     That daily payment amount would not exceed the lower of $2,450 or 15% of Plaintiff's receipts from its accounts receivable for that day;

E.     The interest rate on the loan would not exceed 10% per year and was a legal rate;

F.     Pearl and MSI failed to state the actual interest rate on the loan and failed to make federal and state mandated disclosures regarding the loans; and

G.     Pearl and MSI represented that the loan complied with all applicable laws.

118.   Regarding the 2016 Pearl Loan, Pearl and MSI also represented as follows:

A.     That it was a lender which was licensed to make loans in the State of California;

B.     That the transaction would be a loan of $120,000 which would all be paid to Plaintiff at the close of the loans;

C.     That the proposed loans would earn interest at less than the legal rate and that the payments could be made from Plaintiff's cash flow without interfering with Plaintiff's ability to do business:

D.     That daily payment amount would not exceed the lower of $1,399 or 15% of Plaintiff's receipts from its accounts receivable for that day;

E.     The interest rate on the loan would not exceed 10% per year and was a legal rate;

F.     Failed to state the actual interest rate on the loan and failed to make federal and state mandated disclosures regarding the loans; and

G.     That the loan complied with all applicable laws.

119.   Plaintiff relied on these representations and agreed to take out the Pearl Loans.

Plaintiff's reliance was reasonable because Pearl and MSI were acting as lenders and/or brokers and claimed to be knowledgeable and experienced regarding lending issues.

120.    The mis-representations and breaches of Pearl and MSI and other issues with the Pearl Loans are numerous and include, without limitation:

A.    Although, the transactions was proposed by Pearl and MSI as a loan, the documentation attempts to construe the transaction as an alleged 'sale' of a portion of a company's 'receipts';

B.    There was no transfer of title to any alleged 'receipts';

C.    The payments are made on a daily basis in the same amount regardless of the 'receipts' or 'proceeds' for that day;

D.    Pearl and MSI did not assume any of the ordinary risks of loss that comes with ownership.

E.    The Pearl Loans included an alleged 'broad form' security agreement that is inconsistent with ownership of any alleged 'receipts;

F.    The Pearl Loans included an alleged guaranty that is inconsistent with ownership of any alleged 'receipts;

G.    The Pearl Loans required Plaintiff to execute a confession of judgment which is inconsistent with ownership of any alleged 'receipts' and makes the transaction an alleged 'full recourse' loan.

H.    The loan documents, in general, do not use the term loan but are inconsistent with an alleged sale of 'receipts';

I.    The default provision in the loan documents makes non-payment a default which is inconsistent with an alleged sale of 'receipts';

J.    The loan documents do not attempt to separate the alleged portion of the borrower's 'receipts' or 'proceeds' that supposedly belongs to Pearl and there is no separate

bank account for the alleged 'receipts" belonging to Pearl;

K.      The Pearl Loans are usurious under both California and New York law and the high costs of the loan caused the balance transferred to Plaintiff to substantially less than the amount promised;

L.      Pearl and MSI do not qualify as a finance lender in California;

M.      The loan documentation and funding were provided with no real opportunity for review or negotiation – i.e. are contracts of adhesion; and

N.      The business and accounting records of both Plaintiff and Pearl treated the transaction as a loan under the standards of the Financial Accounting Standards Board.

121.    Pearl and MSI were aware that their representations were false at the time they were made for the purpose of inducing Plaintiff into entering into the Pearl Loans and were aware that Plaintiff was relying on the representations.

122.    As a proximate result of Pearl and MSI's fraudulent and fraudulent acts and representations, Plaintiff has been damages in an amount in excess of $400,000.

123.    Pearl and MSI's actions were intentional and malicious such that exemplary damages should be awarded in an amount to be proven at trial.

**SEVENTEENTH CLAIM FOR RELIEF**
(Negligence Per Se for Violation of California Finance Lenders Law against Defendant Pearl and MSI)

124.    Plaintiffs hereby incorporate by reference paragraphs 1 through 123, inclusive, as if fully set forth herein.

125.    Pearl functioned in the capacity of a lender without being licensed under the California Finance Lenders Law commencing with California *Finance Code* section 22001.

126.    Plaintiff is informed and believes, and thereupon alleges, that Pearl makes, more than five commercial loan per year and as such is subject to the California Finance Lenders Law.

127.    Pearl had a duty to be licensed to lend money in the State of California and a duty to exercise due care with regard to lending money to California commercial borrowers.

128.    Plaintiffs are informed and believe and thereon allege that Pearl failed to exercise due care by failing to be licensed and failing to comply with California's statutes and regulations pertaining to lending.    California has a strong public policy in protecting its commercial borrowers.

129.    Plaintiffs are informed and believe and thereon allege that Pearl's failure to comply with the California Finance Lenders Law was negligent, and that such negligence was the proximate cause of damages to Plaintiffs.  Plaintiffs are part of the class of persons designed to be protected by the provisions set forth under the California Lenders Finance Law.

130.    Pearl's negligence was the proximate cause of damage to Plaintiff in an amount in excess of $400,000.

WHEREFORE, Plaintiffs, and each of them, pray for judgment against Defendants, and each of them, as follows:

ON THE FIRST CLAIM FOR RELIEF FOR DECLARATORY RELIEF:

1.    For a judicial declaration regarding the 2014 Loan that:

A.    That the agreement entered into between Plaintiffs and Pearl sets forth a collateralized loan transaction to which California and New York usury laws are applicable.

B.    That the 2014 Pearl Loan charges a usurious interest rate under  both California and New York law.

C.    That Plaintiff and Pearl entered into a loan transaction and that Pearl does not own and has not acquired any alleged 'receipts' and/or or any other personal property from Plaintiff.

D.      That Pearl knowingly charged a criminally usurious rate of interest on the 2016 Pearl Loan and entered into the loans with usurious intent.

E.      That the 2014 Pearl Loan is usurious per se.

F.      That the 2014 Pearl Loan and the payments thereon are avoidable preferences and/or fraudulent transfers under the Bankruptcy Code.

G.      That the 2014 Pearl Loan is void ab initio as criminally usurious and, therefore, Defendants are precluded from recovering any remaining installments due under the loans and must repay all payments made to date and that all documents and collateral be cancelled and surrendered.

ON THE SECOND CLAIM FOR RELIEF FOR DECLARATORY RELIEF:

1.      For a judicial declaration regarding the 2016 Loan that:

A.      That the agreement entered into between Plaintiffs and Pearl sets forth a collateralized loan transaction to which California and New York usury laws are applicable.

B.      That the 2016 Pearl Loan charges a usurious interest rate in both California and New York.

C.      That Plaintiff and Pearl entered into a loan transaction and that Pearl does not own and has not acquired any alleged 'receipts' and/or or any other personal property from Plaintiff.

D.      That Pearl knowingly charged a criminally usurious rate of interest on the 2016 Pearl Loan and entered into the loans with usurious intent.

E.      That the 2016 Pearl Loan is usurious per se.

F.      That the 2016 Pearl Loan and the payments thereon are avoidable preferences and/or fraudulent transfers under the Bankruptcy Code.

G.    That the 2016 Pearl Loan is void ab initio as criminally usurious and, therefore, Defendants are precluded from recovering any remaining installments due under the loans and must repay all payments made to date and that all documents and collateral be cancelled and surrendered.

ON THE THIRD CLAIM FOR RELIEF FOR AVOIDANCE OF PREFERENTIAL TRANSFERS:

1.    That all transfers from Plaintiff to Pearl within 90 days prior to the filing of Plaintiff's Bankruptcy Proceeding be avoided; and

2.    That Pearl be ordered to pay back all amounts transferred to it during the 90 days prior to the filing of Plaintiff's Bankruptcy Proceeding be avoided.

ON THE FOURTH CLAIM FOR RELIEF FOR AVOIDANCE OF LIENS AND EQUITABLE SUBORDINATION:

1.    For equitable subordination of Pearl's alleged claims;

2.    For preservation of claims, and/or transfer of Pearl's alleged liens securing their subordinated claims to Plaintiffs' estate.

ON THE FIFTH CLAIM FOR RELIEF FOR AVOIDANCE AND PRESERVATION OF LIEN CLAIMS:

1.    For avoidance of Pearl's alleged liens;

2.    For preservation of claims, and/or transfer of Pearl's alleged liens securing their subordinated claims to Plaintiffs' estate.

ON THE SIXTH CLAIM FOR RELIEF FOR AVOIDANCE OF FRAUDULENT TRANSFERS:

1.    For avoidance of the fraudulent transfers made to Pearl and MSI within two years of the filing of Plaintiff's Bankruptcy Proceeding.

ON THE SEVENTH CLAIM FOR RELIEF FOR AVOIDANCE OF FRAUDULENT TRANSFERS:

1.      For avoidance of the fraudulent transfers made to Pearl and MSI within four years of the filing of Plaintiff's Bankruptcy Proceeding.

ON   THE   EIGHTH   CLAIM   FOR   RELIEF   FOR   USURY   AND   UNJUST ENRICHMENT/DISGORGEMENT:

1.      For an order declaring that each of the agreements entered into between Plaintiff and Pearl as a loan transaction, and thus, void ab initio under New York law because they charge a criminally usurious interest rate in excess of 25%;

2.      An order that Pearl and MSI repay Plaintiff all principal and interest previously paid by Plaintiff to Pearl in connection with the criminally usurious loans;

3.      An order disgorging Pearl and MSI of their ill-gotten profits as a result of any and all similarly issued loans to other victims, and be ordered to pay those ill-gotten profits into this Court.

ON THE NINTH CLAIM FOR INJUCTION:

1.      For an order from this Court, granting a permanent injunction enjoining Pearl and MSI and any one acting in concert with them or under their control, from taking any action enforcing the Pearl Loan agreements or any related document;

2.      An order vacating the Confession of Judgment and other enforcement mechanisms in connection with the Pearl Loan agreements.

/ / /

/ / /

/ / /

ON THE TENTH CLAIM FOR RELIEF FOR VALUATION OF ASSETS AND DETERMINATION OF EXTENT OF LIEN:

1.    For an order declaring the amount of Pearl's claim in Plaintiff's Bankruptcy Proceeding, if any;

2.    For an order declaring the value of any alleged security for Pearl's claim, if any;

3.    For an order declaring to what extent Pearl's claim in Plaintiff's Bankruptcy Proceeding, if any, is unsecured;

4.    For an order that to the extent Pearl's claim is disallowed and/or avoided, the amount disallowed and/or avoided be preserved for the benefit of Plaintiff's Bankruptcy Estate pursuant to 11 U.S.C. Section 551.

ON THE ELEVENTH CLAIM FOR RELIEF FOR DISALLOWANCE OF CLAIM:

1.    For an order disallowing Pearl's claim in Plaintiff's Bankruptcy Proceeding;

2.    For an order that to the extent Pearl's claim is disallowed, the amount disallowed be preserved for the benefit of Plaintiff's Bankruptcy Estate pursuant to 11 U.S.C. Section 551.

ON THE TWELFTH CLAIM FOR RELIEF FOR VACATING VOID CONFESSION OF JUDGMENT:

1.    For an order vacating the Confession of Judgment Nunc Pro Tunc to the date of entry of the judgment.

ON THE THIRTEENTH CLAIM FOR RELIEF FOR UNCONSCIONABILITY:

1.    For an order declaring the Pearl Loans unenforceable;

2.      For an order all amounts paid on the Pearl Loans disgorged to Plaintiff.

ON THE FOURTEENTH CLAIM FOR RELIEF FOR VIOLATION OF NEW YORK
GENERAL BUSINESS LAW SECTION 349:

1.      For an order that Pearl and MSI repay all interest and other amounts previously
paid by Plaintiffs;

2.      For an order granting a permanent injunction against Pearl and MSI restraining
them from enforcing any of their rights under the Pearl Loans;

3.      For an order awarding Plaintiffs direct and consequential damages in excess of
$400,000.

4.      For an order awarding Plaintiff treble damages;

5.      For an order awarding Plaintiffs their attorney's fees and costs incurred in this
action.

ON THE FIFITHTEENTH CLAIM FOR RELIEF FOR VIOLATION OF
CALIFORNIA BUSINESS & PROFFESSIONS CODE SECTION 17200 ET. SEQ.:

1.      For an order that Pearl and MSI repay and disgorge all interest and other
amounts previously paid to Plaintiffs;

2.      For an order granting a permanent injunction against Pearl and MSI restraining
them from continuing their unlawful business practices;

3.      For an order awarding Plaintiffs their attorney's fees and costs incurred in this
action

/ / /

/ / /

/ / /

ON THE SIXTEENTH CLAIM FOR RELIEF FOR FRAUD:

1.    For an award of damages against Pearl and MSI in the amount in excess of $400,000;

2.    For exemplary damages against Pearl and MSI in an amount to be proven at trial;

ON THE SEVENTEENTH CLAIM FOR RELIEF FOR NEGLIGENCE:

1.    For an award of damages against Pearl and MSI in the amount in excess of $400,000.

ON ALL CAUSES OF ACTION:

1.    For costs of suit incurred herein;

2.    For attorneys fees and costs if and as applicable;

3.    For prejudgment interest; and

4.    For such other and further relief as may be just and proper.

DATED: December 20, 2016                    LAW OFFICES OF ROBERT M. YASPAN

By: _____
ROBERT M. YASPAN
JOSEPH G. McCARTY
DEBRA R. BRAND
(Proposed) General Counsel for Debtor in
Possession/Plaintiff