1  ROBERT M. YASPAN, SBN 051867
   JOSEPH G. McCARTY, SBN 151020
2  DEBRA R. BRAND, SBN 162285
   LAW OFFICES OF ROBERT M. YASPAN
3  21700 Oxnard Street, Suite 1750
   Woodland Hills, California 91367
4  Telephone: (818) 905-7711
   Facsimile: (818) 501-7711
5

6  *General Counsel for Debtor-in-Possession/Plaintiff*

7

8              UNITED STATES BANKRUPTCY COURT

9        CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION

10

11 IN RE:                          ) Chapter No.: 11
                                   )
12 BIODATA MEDICAL LABORATORIES,   ) Case No.: 6:16-bk-20446-MW
   INC.                            )
13                                 ) Adv. No.:  6:16-ap-01298
              Debtor               )
14                                 )
                                   )
15 BIODATA MEDICAL LABORATORIES,   ) PLAINTIFF'S OPPOSITION TO MOTION (1)
   INC.                            ) TO DISMISS COMPLAINT AND (2) FOR A
16                                 ) MORE DEFINITE STATEMENT
17            Plaintiff.           )
                                   )
18      vs.                        )
                                   )
19 PEARL BETA FUNDING, LLC ; and   ) Date:  April 13, 2017
   MERCHANT SOURCE, INC.           ) Time:  9:00 a.m.
20                                 ) Location:   Video Courtroom 225
                                   )             3420 Twelfth Street
21            Defendants.          )             Riverside, CA 92501
                                   )
22                                 )             or
                                   )
23                                 )             411 West Fourth Street
                                   )             Courtroom 6C
24                                 )             Santa Ana, CA 92701
25                                 ) [Appearances may be made at either courtroom]
26                                 )

27

28

1

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................... 2

II.   DISCUSSION......................................................................... 4

    A.    LEGAL STANDARDS FOR RULING ON
        12(b)(6) MOTIONS TO DISMISS...................................... 4

    B.    THE COMPLAINT ADEQUATELY ALLEGES
        THAT THE TRANSACTIONS ARE LOANS AND
        NOT PURCHASES OF "RECEIPTS" ................................. 5

    1.    The 2016 Agreement is Usurious Pursuant to California Law...... 6

    2.    The 2014 Pearl Loan is Usurious and Has No
        Claim of Exemption ................................................. 9

    3.    Both of the Loans Are Criminally Usurious in New York.......... 9

    C.    BIODATA STATES CLAIMS FOR RELIEF WITH
        REGARD TO THE FIRST AND SECOND CLAIMS............... 11

    D.    BIODATA'S SIXTEENTH CLAIM FOR RELIEF
        STATES A CLAIM FOR FRAUD...................................... 11

    E.    RES JUDICATA DOES NOT BAR BIODATA'S
        CLAIMS, BECAUSE THE NEW YORK CASE IS
        NOT FINAL............................................................... 13

III.  THE COMPLAINT IS NOT UNCERTAIN AND THE
    MOTION FOR MORE DEFINITE STATEMENT
    SHOULD BE DENIED.......................................................... 15

    A.    LEGAL STANDARD FOR RULE 12(e) MOTIONS............... 15

    B.    MOTIONS FOR MORE DEFINITE STATEMENTS ARE
        NOT TO BE USED TO FLESH OUT FACTUAL
        DETAILS IN LIEU OF DISCOVERY............................... 17

    C.    THE COMPLAINT FILED BY PLAINTIFF HEREIN
        PLEADS MORE THAN ENOUGH DETAIL IN FACT
        AND LAW TO PLACE DEFENDANT ON CLEAR
        NOTICE OF THE CLAIMS AGAINST HIM TO ENABLE
        DEFENDANT TO ANSWER IN GOOD FAITH
        AND WITHOUT PREJUDICE......................................... 17

1

2

IV.    IF THERE ARE ANY DEFECTS IN THE COMPLAINT,
PLAINTIFF SHOULD BE ENTITLED TO AMEND IT..................    19

V.    CONCLUSION...............................................................    20

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

## **TABLE OF AUTHORITIES**

4

5    In re APF Company,
274 B.R. 408 (D.C. Del. 2001)………………………………………………    17

6    Ashcroft v. Iqbal,
7    129 S. C. 1937 (2009)……………………………………………………    4

8    Baruch Inv. Co. v. Huntoon
(1967) 257 Cal.App.2d 485…………………………………………………    5

9
Bell Atlantic Corp. v. Twombly,
10   550 U.S. 544 (2007). …………………………………………………    4

11   Bernstein v. IDT Corp.,
12   582 F. Supp. 1079 (D.C. Del. 1984)………………………………………    9

13   Bochenski v. M & T Bank,
2015 WL 1040281, *16 (D. Md. 2015)……………………………………    16

14

15   Boerner v. Colwell Co.,
21 Cal.3d 37 (1978)………………………………………………………    6

16
Bosse v. Crowell Collier & MacMillan,
17   565 F.2d 602 (9th Cir. 1977)………………………………………………    11

18   California Grocers Assn. v. Bank of America,
19   22 Cal.App.4th at p. 214……………………………………………………    8

20   Carboni v. Arrospide,
2 Cal.App.4th 76 (1991) …………………………………………………    7

21

22   Cooper v. Parsky,
140 F.3d 433 (2d Cir. 1998)………………………………………………    4

23   Doe v. United States,
24   58 F.3d 494 (9th Cir. 1995) ………………………………………………    19

25   Donatelli v Siskind,
170 AD2d 433 [2d Dept 1991]……………………………………………    9

26
Fladeboe v. Am. Isuzu Motors Inc.,
27   150 Cal. App. 4th 42 (2007)………………………………………………    8

28

1

2    Hammelburger v. Foursome Inn Corp.,
54 N.Y.2d 580 (1981)………………………………………………… 10

3

4    Janisse v. Winston Investment Co.
(1957) 154 Cal.App.2d 580…………………………………………… 5

5    Jones v. Wells Fargo Bank,
112 Cal. App. 4th 1527 (2003)……………………………………… 8

6

7    Juneau Square Corp. vs. First Wisconsin National Bank of Milwaukee,
60 F.R.D. 46 (D.C. Wis. 1973) ……………………………………….. 16

8

9    Koppel v. 4987 Corp.,
167 F.3d 125 (2d Cir. 1999)………………………………………… 4

10

11    Kost v. Kozakiewicz,
1 F.3d 176 (3d Cir. 1993). ………………………………………….. 5

12    Lindemuth v. Shannon Fin. Corp.,
637 F. Supp. 991 (N.D. Cal. 1986)………………………………… 11

13

14    Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc.
(2001) 89 Cal.App.4th 1042……………………………………… 8

15

16    Michael v. Clark Equip. Co.,
380 F.2d 351 (2nd Cir. 1967)……………………………………… 16

17    Milana v. Credit Discount Co.
(1945) 27 Cal.2d 335, ……………………………………………….. 5

18

19    McKee v. Pope Ballard Shepard & Fowle, Ltd.,
604 F. Supp. 927 (N.D. Ill. 1985)………………………………… 11

20

21    Merch. Funding Servs., LLC v. Volunteer Pharmacy, Inc.,
44 N.Y.S.3d 876 (N.Y. Sup. Ct. 2016)…………………………… 10, 13

22

23    Moss v. U.S. Secret Service,
572 F.3d 962, 969 (9th Cir. 2009)………………………………… 4

24    Nash v. Port Auth. of N.Y. & New Jersey,
22 N.Y.3d 220, 225 (2013)………………………………………… 13

25

26    In re R & R Assocs. of Hampton,
248 B.R. 1, 4 (Bankr. D.N.H. 2000)…………………………….. 5

27    Pearl Capital Rivis Ventures, LLC v. RDN Const., Inc.,

28

54 Misc. 3d 470 (N.Y. Sup. Ct. 2016)...................................................... 9

Schreiber Distributing v. Serv–Well Furniture Co.,
806 F.2d 1393 (9th Cir.1986)........................................................... 19

W. Pico Furniture Co. v. Pac. Fin. Loans,
2 Cal. 3d 594 (1970)..................................................................... 5

Wooton v. Coerber
(1963) 213 Cal.App.2d 142.............................................................. 5

Temple v. Haft,
73 F.R.D. 49, 53 (D.C. Del. 1976). ................................................... 9

Thrasher vs. Missouri State Highway Comm 'n,
534 F. Supp. 103 (D.C. Mo. 1981)..................................................... 17

In re Venture Mtge. Fund, L.P.,
245 BR 460 [SD NY 2000] ............................................................. 9

Walling v. Beverly Enterprises,
476 F.2d 393 (9th Cir. 1973). ......................................................... 11

Washington v. Baenziger,
673 F. Supp. 1478 (N.D. Cal. 1987). ................................................. 11

## CODES & STATUTES

11 U.S.C. Sections 502…………………………………………….. 18

11 U.S.C. Sections 506…………………………………………….. 18

11 U.S.C. Sections 510(c)………………………………………….. 18

11 U.S.C. Sections 544 ……………………………………………. 18

11 U.S.C. Section 547……………………………………………… 18

11 U.S.C. Section 548……………………………………………… 18

Fed.R.Civ.Proc. Rule Rule 9(b)……………………………………. 11

Fed.R.Civ.Proc. Rule Rule 8(a)(2) ………………………………… 11

Fed.R.Civ.Proc. Rule Rule 8(e)(1)………………………………… 11

Fed.R.Civ.Proc. Rule 12(b)(6). …………………………………… 19

Fed.R.Civ.Proc. Rule 12(e) ……………………………………….. 15,16

Fed.R.Civ.Proc. 15(a)……………………………………………… 19

5C Federal Practice and Procedure………………………………… 16

Civil 3d § 1376 (2017)…………………………………………….. 17

N.Y. Prac. § 302…………………………………………………… 15

Plaintiff/Debtor-in-Possession BioData Medical Laboratories, Inc. ("Plaintiff" or

"BioData") hereby submits its opposition to Defendant Pearl Beta Funding, LLC's ("Pearl" or

"Defendant") Motion (1) to Dismiss Complaint and (2) for a More Definite Statement

("Motion") as follows:

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

As pled in the Complaint, Defendant is a predatory lender which engages in elaborate

pretenses for the purpose of attempting to avoid usury and other applicable laws of both

California and New York while charging ridiculous, ruinous, and parasitic hidden interest rates

in excess of 190% per year. Pearl's Motion exhibits the same careless disregard to the actual

facts and makes an almost clever attempt to get around and avoid the applicable law and clear

public policy considerations.

It should be noted that the 2016 Agreement, which is attached to Pearl's request for

Judicial Notice ("RJN") as Exhibit 4 ("2016 Agreement" or "2016 Pearl Loan[1]") does not

purport to an alleged "sale" of accounts receivable. Rather, the 2016 Agreement provides for

the alleged "sale" of actual "Receipts" from customers i.e. cash. In short, the transaction is an

advance of funds in exchange for cash to be repaid in the future i.e. a loan. There is nothing

conditional about it – daily payments are required, guaranties are provided, and a judgment by

confession in the full amount is also required. Further, the 2016 Agreement has a choice of law

provision for New York law. New York does not have an exemption from its usury law based

upon any alleged California license. As such, there is no applicable exemption from usury and

either or both New York and California usury law applies to the transactions at issue in this

case.

In the Complaint, Plaintiff properly alleges a number of claims against Pearl arising out

---

[1] As also defined in the Complaint.

1  of these usurious transactions that took place in or about December 2014 and in or about June

2  2016.  Defendant's contention that it is exempt from the California usury law also fails because

3  of the transactions are unconscionable and Pearl's unclean hands preclude it from asserting the

4  defense that it is exempt.

5       Defendant also incorrectly contends that there is a judgment of confession that was

6  entered in the Supreme Court of New York ("New York Case") from the 2016 Pearl Loan, and

7  therefore all of the claims are barred by res judicata.  However, the New York Case is not final

8  and the judgment can be set aside.  Notably, the entry of the Judgment was entered three (3)

9  days before the Petition was filed, and the case was removed to the United States District Court

10  for the Western District of New York ("District Court") and a motion to transfer to this Court

11  was to be transferred to this Court (Plaintiff's Request for Judicial Notice, Exhibit "B").  The

12  motion to transfer is still pending.  Id.  Since the case is not final and Plaintiff is timely

13  requesting in this action to have the judgment set aside (the judgment can be set aside (Twelfth

14  Claim), res judicata does not bar all of the claims.  Further, the 2014 Pearl Loan[2] is not part of

15  the New York Case and res judicata would not apply to it.

16       Defendant also incorrectly contends that the fraud allegations fail to meet the

17  heightened standards of fraud.  Plaintiff has adequately pled fraud as discussed below.

18       Finally, Plaintiff contends that the Complaint is neither vague nor ambiguous.  Rather

19  the Complaint is substantially more detailed and particularized than required by the Federal

20  Rules of Civil Procedure and is drafted in a clear and understandable manner that Defendant

21  can answer the claims and allegations.

22       However, to the extent that the Court may be inclined to sustain any of the grounds for

23  the Motion, then Plaintiff should be allowed to amend the Complaint to cure any alleged

24  defects.

25

26

27

28

---

[2] As defined in the Complaint.

## II.    DISCUSSION

### A.    LEGAL STANDARDS FOR RULING ON 12(b)(6) MOTIONS TO DISMISS

In considering a motion pursuant to Fed. R. Civ. P. 12(b)(6), a complaint need contain only "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  ("Twombly").

The requisite degree of plausibility was clarified in Ashcroft v. Iqbal, 129 S. C. 1937, 1940 and 1949 (2009) ("Iqbal"):

> A claim has facial plausibility when the plaintiff pleads factual content that allows the
>
> court to draw the reasonable inference that the defendant is liable for the misconduct
>
> alleged.  Id.  The plausibility standard is not akin to a "probability requirement" but it
>
> asks for more than a sheer possibility that a defendant has acted unlawfully.

Id at 1949 (citing Twombly at 556-570).  The Ninth Circuit further explained the Iqbal plausibility standard:  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibility suggestive of a claim entitling the plaintiff to relief."  Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) (internal citations omitted).  Iqbal instructs lower courts to "draw on their judicial experience and common sense" in determining whether the allegations are sufficiently plausible to survive a motion to dismiss.  Iqbal, supra at 1950.

To survive a motion to dismiss, a plaintiff only has to allege sufficient facts, not prove them.  Koppel v. 4987 Corp., 167 F.3d 125, 133 (2d Cir. 1999). A court's role in ruling on a motion to dismiss is to evaluate the legal feasibility of the complaint, not to undertake to weigh the evidence which may be offered to support it. Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998).  Thus, for the purposes of the Motion to Dismiss, the Court accepts as true all of the material allegations in the Plaintiff's complaint.

1      Further, the court is not charged with resolving or even weighing the disputed facts of a

2   plaintiff's case. See Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).   Thus, the Court's

3   role is not to weigh the merits of the plaintiff's allegations, but rather to simply determine if

4   sufficient facts are plead showing that the plaintiff is entitled to relief.  See,  In re R & R

5   Assocs. of Hampton, 248 B.R. 1, 4 (Bankr. D.N.H. 2000).

6

7      **B.       THE COMPLAINT ADEQUATELY ALLEGES THAT THE**

8              **TRANSACTIONS ARE LOANS AND NOT PURCHASES OF**

9              **"RECEIPTS"**

10      As set forth in the Motion, Defendant acknowledges that the Complaint at paragraphs

11   10-30 sets forth allegations as to the characterization of the 2014 Pearl Loan and the 2016 Pearl

12   Loan as usurious loans and not purchases of alleged "Receipts".  For purposes of this Motion,

13   these allegations must be considered true.

14      As set forth in W. Pico Furniture Co. v. Pac. Fin. Loans, 2 Cal. 3d 594, 603–04 (1970):

15

16      **"Whether a particular transaction is a usurious loan or a sale is a question of fact.**
     (Baruch Inv. Co. v. Huntoon (1967) 257 Cal.App.2d 485, 492, 65 Cal.Rptr. 131; Wooton
17   v. Coerber (1963) 213 Cal.App.2d 142, 145, 28 Cal.Rptr. 635.) In making such a
     determination, **the trier of fact must look to the substance of the transaction rather**
18   **than to its form**. (Milana v. Credit Discount Co. (1945) 27 Cal.2d 335, 340, 163 P.2d
     869; Baruch Inv. Co. v. Huntoon, Supra; Wooten v. Coerber, Supra; Janisse v. Winston
19   Investment Co. (1957) 154 Cal.App.2d 580, 582, 317 P.2d 48, 50.) In the last cited case
     the court emphasized that 'Where the form of the transaction makes it appear to be
20   nonusurious, **it is for the trier of the fact to determine whether the intent of the**
     **contracting parties was that disclosed by the form adopted, or whether such form**
21   **was a mere sham and subterfuge to cover up a usurious transaction**.' Thus, we
     observed in Milana that the 'courts have been alert to pierce the veil of any plan
22   designed to evade the usury law and in doing so to disregard the form and consider the
     substance. (Citations.)' (27 Cal.2d at p. 340, 163 P.2d at p. 871.) (emphasis added)."
23

24      Additionally, it should be noted that the 2016 Agreement, does not purport to allegedly

25   "sell" accounts receivable.  Rather, the 2016 Agreement provides for the alleged "sale" of

26   actual "Receipts" from customers i.e. cash. See, RJN, Exhibit 4. Specifically, the 2016

27   Agreement defines "Receipts" on page 1 as,  "(the "Receipts" **defined as all payments made**

28

**by cash, check, electronic transfer or other form of monetary payment in the ordinary course of Merchant' business)** [emphasis added], . . .." The rest of the 2016 Agreement uses the term "Receipts" to describe the alleged property that has been sold. For example, at page 2, paragraph 1.3 of the alleged 2016 Agreement it states, ". . . PBF offers to purchase additional Receipts . . .." Additionally, at paragraph 1.4 it states, "[t]he Specific Amount is intended to represent the Specific Percentage of Merchant's Receipts . . ."

In short, the transaction is an advance of funds in exchange for cash to be repaid in the future i.e. a loan. There is nothing conditional about it – daily payments are required, guaranties are provided, and a judgment by confession in the full amount is also required. See, RJN, Exhibits 1-3 and 4, page, 1 and paragraph1.12. In fact, Pearl artfully ignores the use of the term "Receipts" in the portion of the 2016 Agreement it quotes regarding the alleged conditional payment. The reference to factoring agreement is also disingenuous because New York has quite strict requirements for factoring transaction which Pearl fails to meet as well. The alleged 2016 Agreement is not a "factoring agreement" and the case-law regarding such does not apply in this case.

Ultimately, whether or not an alleged sale or a loan occurred between these parties cannot be finally determined by this Motion. Plaintiff has adequately pled the transaction as a loan and for the purpose of this Motion the pleading must be accepted as true. As such, the First, Second, Fourth, Fifth, Eighth, Eleventh, Twelfth, Thirteenth, Fourteenth, and Fifteenth claims are sufficiently pled.

1.    The 2016 Agreement is Usurious Pursuant to California Law

As set forth above, it is well established that courts look to the substance rather than the form of a transaction in determining whether it is a "loan or forbearance." See, e.g., Boerner v. Colwell Co., 21 Cal.3d 37, 44 (1978) (1978) (citing numerous cases); Milana v. Credit Discount Co., 27 Cal. 2d 335, 340 (1945) (citing numerous cases). Plaintiff has alleged numerous reasons

that the transactions were not a purchase of Receipts, but instead a loan (Complaint, paragraph

10-30).  Hence, such would be an issue of fact regardless of how the 2016 Pearl Agreement

characterizes the transaction.

   Furthermore, if as Plaintiff alleges, the agreement is a loan and not a sale, then the loan

would be usurious.  As alleged in the Complaint, the effective annual interest rate was, at least,

210% -- a usurious rate.  (Complaint, paragraph 30).  There is no doubt that the loan is usurious

(See, Cal. Const. Article 15, Section 1), the only issue is if Pearl qualifies for an alleged

exemption.

   First, it should be noted that the alleged 2016 Agreement has a choice of law provision

for New York law. See, RJN, Exhibit 4, paragraph 4.5.  New York does not have an exemption

from its usury law based upon any alleged California license.  Pearl cannot simply ignore its

own choice of New York law.  As such, at least New York usury law applies to the transactions

at issue in this case.

   Pearl's use of artful fictions and specious disclaimers in its 2016 Agreement such that it

has contended that the alleged transaction is not a loan also precludes it from now claiming that

it is exempt from California's usury law. In short, it has admitted that the alleged loan was

simply not transacted pursuant to Pearl's alleged California license and Pearl's unclean hands

preclude it from asserting the defense that it is exempt.    Plaintiff contends that, even if the

Defendant was a licensed finance lender, Defendant cannot, on the one hand, design a

transaction to deceive Plaintiff and then after it was determined that the transaction was a sham

and a subterfuge to hide the true interest rate of this usurious loan, on the other hand claim the

transaction would be exempt as a loan.

   Additionally, the alleged transactions are unconscionable under California law and

therefore do not apply for any alleged exemption.  See, Carboni v. Arrospide, 2 Cal.App.4[th] 76

(1991) [loan with interest rate of 200% per annum was unconscionable and therefore

1  unenforceable despite alleged exemption to usury law].

2       The fraudulent nature of the loans, the false, misleading, and/or deceptive statements

3  regarding the loans, the omission of material information about the loans, the failure to state and

4  provide for an actual interest rate in the documentation, the other violations of California

5  Finance Lender Law, and the attempt to cast the transaction as a sale or transfer of 'receipts'

6  
7  prevents and/or estops Defendant from relying on any alleged exemptions from California's

8  usury law.

9       As set forth in Jones v. Wells Fargo Bank, 112 Cal. App. 4th 1527, 1539–40 (2003):

10     "Unconscionability is a question of law. (*Marin Storage & Trucking, Inc. v. Benco
        Contracting & Engineering, Inc.* (2001) 89 Cal.App.4th 1042, 1055, 107 Cal.Rptr.2d
11      645.) The doctrine includes both procedural and substantive elements. (*Id.* at p. 1052,
        107 Cal.Rptr.2d 645.) The procedural element requires oppression or surprise. (*Ibid.*)
12      Oppression occurs where a contract involves lack of negotiation and meaningful choice,
        surprise where the allegedly unconscionable provision is hidden within a prolix printed
13      form. (*Ibid.*) The substantive element concerns whether a contractual provision
        reallocates risks in an objectively unreasonable or unexpected manner. (*Id.* at pp. 1052–
14      1053, 107 Cal.Rptr.2d 645.) To be substantively unconscionable, a contractual provision
        must shock the conscience. (*California Grocers Assn. v. Bank of America, supra,* 22
15      Cal.App.4th at p. 214, 27 Cal.Rptr.2d 396.)"

16
17      Likewise, Plaintiff cannot create such a procedurally and substantively transaction and

18  then state "no harm, no foul" because it is allegedly a licensed lender.  As discussed in Fladeboe

19  v. Am. Isuzu Motors Inc., 150 Cal. App. 4th 42, 56 (2007), as modified (Apr. 24, 2007), "The

20  [unclean hands] doctrine demands that a plaintiff act fairly in the matter for which he seeks a

21  remedy.  He must come into court with clean hands, and keep them clean, or he will be denied

22  relief, regardless of the merits of his claim." (cite omitted).  The doctrine of unclean hands

23  
24  requires unconscionable, bad faith, or inequitable conduct by the plaintiff in connection with the

25  matter in controversy.

26      In other words, the 2016 Pearl Loan was so unconscionable a transaction that Defendant

27  should not be allowed to now claim that it is an exempt transaction.  Highlighting its bad faith,

28  the choice of law provision states that the Courts are to apply New York law, which as more

1  fully discussed below, considers these types of loans as criminally usurious.  See, RJN, Exhibit

2  4, paragraph 4.5.

3          2.      The 2014 Pearl Loan is Usurious and Has No Claim of Exemption

4          Defendant does not contend that the 2014 Pearl Loan is exempt from usury.  In fact, the

5  purported license is subsequent to the 2014 Pearl Loan and is usurious.

6          3.      Both of the Loans Are Criminally Usurious in New York

7          Pearl was found to have committed criminal usury in Pearl Capital Rivis Ventures, LLC

8  v. RDN Const., Inc., 54 Misc. 3d 470, 473–7 (N.Y. Sup. Ct. 2016).  The Court stated:

9

10         "While the defense of civil usury is unavailable to corporate entities in New York, the
           defense of criminal usury may lie in situations where the lender knowingly charges a
11         corporate entity annual interest in excess of 25% on a loan. Penal Law § 190.40 states
           that:
12         "[a] person is guilty of criminal usury in the second degree when, not being authorized
           or permitted by law to do so, he knowingly charges, takes or receives any money or
13         other property as interest on the loan or forbearance of any money or other property, at a
           rate exceeding twenty-five per centum per annum or the equivalent rate for a longer or
14         shorter period."

15         A finding of criminal usury requires:

16
           "proof that the lender (1) knowingly charged, took or received (2) annual interest
17         exceeding 25% (3) on a loan or forbearance. The first element requires proof of the
           general intent to charge a rate in excess of the legal rate rather than the specific intent to
18         violate the usury statute. Accordingly, the borrower satisfies his prima facie burden of
           proving usury by showing that the note given to the lender evidences a loan and reserves
19         an illegal rate of interest. If usury is proved, the loan is deemed void, and the lender
           sacrifices his principal and interest" (In re Venture Mtge. Fund, L.P., 245 BR 460, 473-
20         474 [SD NY 2000] [citations omitted]; General Obligations Law § 5-511 [2]).

21
           "In order for a transaction to constitute a loan, there must be a borrower and a lender;
22         and it must appear that the real purpose of the transaction was, on the one side, to lend
           money at usurious interest reserved in some form by the contract and, on the other side,
23         to borrow upon the usurious terms dictated by the lender" (Donatelli v Siskind, 170
           AD2d 433, 434 [2d Dept 1991] [citations omitted])."
24

25         Notably, the New York Court in Pearl found the transaction was usurious, even though it

26  was allegedly conditioned upon the sale of products and services.  The Court stated "[it] comes

27  to the inevitable conclusion that the real purpose of the agreement was for plaintiff to lend

28

money to defendants at the usurious interest rate set forth therein, and that defendant agreed to borrow the money based on the same usurious terms dictated by plaintiff. Denominating a loan document by another name, as in this case, by calling it a "Merchant Agreement," does not shield it from the judicial determination that it contemplates a criminally usurious transaction. Accordingly, as the party seeking to exact criminally usurious interest, plaintiff is also "not entitled to equitable relief". Id at 475.  See also, Merch. Funding Servs., LLC v. Volunteer Pharmacy, Inc., 44 N.Y.S.3d 876 (N.Y. Sup. Ct. 2016), which as discussed more fully below also determined an alleged purchase of receivables was criminally usurious and the transaction was void ab initio.

Furthermore, Defendant's argument that the loan was conditional is not persuasive.  As discussed in Pearl, the requirement of a guaranty, daily payments, and the confession of judgment for the full amount along with the other facts and circumstances, demonstrated that the principal sum advanced was absolutely repayable with calculated interest that exceeds the legal rate. Id at 475.   See also, RJN, Exhibit 4, paragraph 1.12 (Protections Against Default).

Additionally, Defendant's claim that the defense of usury was waived or confirmed is also equally unavailing.  As set forth in Hammelburger v. Foursome Inn Corp., 54 N.Y.2d 580, 595 (1981), "[a] lender who may be criminally prosecuted for a particular loan should not be permitted to avoid the civil consequence of this wrong through the simple expedient of obtaining a waiver from the borrower. As a matter of public policy, [the court] would hold that criminal usury is not waivable outside a judicial proceeding."

Hence, the Court at this stage of the pleadings should deny the Motion based upon the usury claims.

1  **C.    BIODATA STATES CLAIMS FOR RELIEF WITH REGARD TO THE FIRST**

2  **AND SECOND CLAIMS**

3          As stated in Sections II(A)-(C) above, which arguments are incorporated herein, the

4  2014 Pearl Loan and the 2016 Pearl Loan are usurious under both California and New York law.

5  As such, it is properly before the Court to determine which law applies as to the two

6  transactions and whether or not these transactions are loans or purchases of receivables. This

7  certainly cannot be determined by this Motion.

8

9  **D.    BIODATA'S SIXTEENTH CLAIM FOR RELIEF STATES A CLAIM FOR**

10  **FRAUD**

11          Although Rule 9(b) requires that the circumstances constituting fraud be stated with

12  sufficient particularity, Rule 8(a)(2) requires only a short and plain statement of the claim

13  showing that the pleader is entitled to relief, and Rule 8(e)(1) requires that each averment of a

14  pleading be simple, concise, and direct. Rules 9(b) and 8 must be harmonized. <u>Washington v.

15  Baenziger</u>, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987). When harmonized, Rules 9(b), 8(a)(2),

16  and 8(e)(1) do not entail an exhaustive cataloging of facts, but only sufficient factual specificity

17  to provide assurance that the plaintiff has investigated the alleged fraud and believes that a

18  wrong has occurred. <u>Temple v. Haft</u>, 73 F.R.D. 49, 53 (D.C. Del. 1976). It follows that the

19  specificity required to apprise defendants of fraud charges against it is only slightly more notice

20  than is required under Rule 8. <u>Bernstein v. IDT Corp.</u>, 582 F. Supp. 1079, 1086 (D.C. Del.

21  1984); <u>McKee v. Pope Ballard Shepard & Fowle, Ltd.</u>, 604 F. Supp. 927, 930 (N.D. Ill. 1985).

22

23          Furthermore, the Rule 9(b) requirement of particularity in pleading allegations of fraud

24  is intended to give a defendant notice of the specific alleged misconduct to enable it to prepare a

25  defense, and to bar fraud suits filed as a pretext for discovery. <u>Lindemuth v. Shannon Fin. Corp.</u>,

26  637 F. Supp. 991, 993 (N.D. Cal. 1986). Rule 9(b) only requires "the identification of

27  circumstances constituting fraud so that the defendant can prepare an adequate answer from the

28

allegations." <u>Walling v. Beverly Enterprises</u>, 476 F.2d 393, 397 (9th Cir. 1973).   A complaint

satisfies Rule 9(b) where it alleges "[t]he time, place, and manner of each act of fraud ... so as to

enable the defendant to prepare an adequate answer." *Bosse v. Crowell Collier & MacMillan*,

565 F.2d 602, 611 (9th Cir. 1977).   Plaintiff has satisfied the heightened pleading requirements

of Rule 9(b) for each of its Fraud claim.

1.      The Complaint Adequately Pleads "What" the Misrepresentations Were

At paragraphs 21, 22, 117 and 118, Plaintiff sets forth the various representations that

were made to Plaintiff by Defendants.

2.      The Complaint Alleges "Why" the Misrepresentations Were False

At paragraphs 24 and 120.

3.      The Complaint Adequately Discusses the "When" the Misrepresentations were

Made at paragraph 21.  Plaintiff alleges that the representations made in or about December

2014.  Paragraph 21.   The 2016 Pearl Loan representations took place in 2016 (paragraph 22).

Clearly, there is no confusion regarding the 2016 Pearl Loan and Defendant is aware of the

particular transaction, because Defendant attaches the contract as Exhibit 4 to its Request for

Judicial Notice.  The document was entered into in or about June 2016.  As such, the

representations were also made in or about June 2016.

4.      The "How" the Misrepresentations were Made at paragraphs 21 and 22, Plaintiff

alleges that there were "discussions", which implies that there were conversations discussing

these transactions.

Plaintiff's allegations provide a sufficient timeframe and context within which the

particular misconduct took place for purposes of Rule 9(b)'s pleading requirements. Because of

these details, Plaintiff's fraud claims satisfy the heightened pleading requirements of Rule 9(b)

and the Court should deny the Motion.

However, if the Court is for any reason inclined to grant the Plaintiff can amend this

1    claim to provide more specificity.

2    **E.    RES JUDICATA DOES NOT BAR BIODATA'S CLAIMS, BECAUSE THE NEW**

3    **YORK CASE IS NOT FINAL**

4    CPLR 5015 provides the grounds for setting aside a judgment in New York.  As set forth

5    in <u>Nash v. Port Auth. of N.Y. & New Jersey</u>, 22 N.Y.3d 220, 225 (2013), "[s]ave for the one-

6    year requirement in section 5015(a)(1) concerning excusable defaults, motions made pursuant to

7

8    paragraphs (2), (3) and (5) contain no limitation of time…"

9    Plaintiff's right as a defendant in the New York proceeding to bring a motion to vacate a

10    judgment can be brought to set aside the purported Confession of Judgment, as discussed in the

11    case of <u>Merch. Funding Servs., LLC v. Volunteer Pharmacy Inc.</u>, supra  (the "Merchant

12    Funding Case").  The Merchant Funding Case involves facts that are on point in both law and

13    facts.  The Affidavit of Non-Payment submitted by Defendant ("Affidavit") (which was

14    conveniently not included in Defendant's Request for Judicial Notice) practically mirrors the

15    affidavit of non-payment that was filed in the Merchant Funding Case.  (See Plaintiff's Request

16    for Judicial Notice, Exhibit A).

17

18    In the Merchant Funding Case:

19    "The affidavit of nonpayment submitted in support of entry of the confession of

20    judgment states, in relevant part, that on February 11, 2016, VP entered into a secured

21    merchant agreement pursuant to which "MFS agreed to buy all rights of the Defendant

22    VP's future accounts receivable, having a face value of $74,750.00. The purchase price

23    for these receivables was $50,000.00" (aff. of nonpayment, ¶ 3). The affidavit of

24    nonpayment further states: "[p]ursuant to the Agreement, Defendant VP authorized MFS

25    to debit from its bank account, by means of an online ACH [Automated Clearing House]

26    debit, a percentage of Defendant VP's accounts receivable (the 'Specified Percentage'),

27    until the purchased amount of receivables—$74,750—was paid in full" (aff. of

28

13

1  nonpayment, ¶ 4). The Specified Percentage set forth in the Agreement is 15%."

2  In the instant case, the Affidavit states facts that include:

3  • The debt arises from Plaintiff's purchase of the receivables of Defendant with a face

4  value of $167,880.00 (Affidavit, paragraph 3).

5

6  • The purchase price of the receivables was $112,671.00. (Affidavit, Exhibit A).

7  • A **daily** amount of 15% was to be paid by ACH debits until paid off in full (Affidavit,

8  Exhibit A).

9  In the Merchant Funding Case, like the present case, there was an alleged default and a

10  confession of judgment entered against the corporation and the guarantors.

11  In the Merchant Funding Case, the defendants brought a motion to vacate the judgment

12  pursuant to CPLR 5015(3) based upon the grounds of "fraud, misrepresentation, or other

13  misconduct of an adverse party." The defendants contended that Agreement was criminally

14  usurious and void *ab initio* as a matter of law, because it contemplates payment by the corporate

15  defendant of interest at the annual rate of 167%, a rate that exceeds the legal rate of interest of

16  25% for a corporation (*see* Penal Law § 190.40). Id at 879.  In this case, Defendant contends

17  that the annual rate of interest is, 210% for the 2016 Pearl Loan (Complaint, paragraphs 29 and

18  30).

19  The Court in the Merchant Funding Case found that, upon review of the documents and

20  consideration of the parties' respective arguments, the inevitable conclusion that the real purpose

21  of the Agreement was for plaintiff to lend money to defendants at the criminally usurious

22  interest rate set forth therein, and that defendant agreed to borrow the money based on the same

23  usurious terms dictated by plaintiff. The Court further determined that the purported purchase of

24  the receivable in the underlying agreement did not shield it from the judicial determination that

25  it contemplates a criminally usurious transaction, which is void *ab initio* as a matter of law. Id at

26

27

28

680.

With regard to vacating the judgment, the plaintiff in the Merchant Funding Case tried to argue that the motion to vacate should proceed through a plenary action and not by a motion to vacate. The Court in granting the motion to vacate stated:

"[t]he submitted affidavits and exhibits clearly and unequivocally demonstrate that the Agreement is criminally usurious on its face, obviating the need for a superfluous plenary action. *Scheckter* makes reference to Siegel, N.Y. Prac. § 302, which states, "[U]nder CPLR 5015 [a][3] a mere motion would seem adequate to the task today." The Court agrees with that observation. In particular, by recognizing the lack of necessity for a plenary action in cases where criminal usury is clear from the submissions attendant to a motion under CPLR 5015[a][3], the victims of predatory lending through such illegal loan agreements are spared the needless cost in time and money of pursing a plenary action, the outcome of which would be the same."

Similarly, Plaintiff herein and the alleged guarantors would also have the right to file a motion to vacate the judgment. This is also the subject matter of the Adversary Complaint and the predatory lending hereto.

Plaintiff is not barred by res judicata, because the case is not a final judgment. Notably, the Twelfth Claim is to vacate the confession of Judgment. Plaintiff has removed the New York case to the District Court and a Motion to Transfer the Case to the Bankruptcy Court is pending. (See Request for Judicial Notice, Exhibit "B").

Furthermore, since the 2014 Pearl Loan is not part of the New York Case, res judicata would not apply to it.

**III.    THE COMPLAINT IS NOT UNCERTAIN AND THE MOTION FOR MORE**

**DEFINITE STATEMENT SHOULD BE DENIED**

**A.    LEGAL STANDARD FOR RULE 12(e) MOTIONS**

A movant's burden in justifying the grant of a Rule 12(e) motion for more definite statement is to persuade the court that the challenged pleading is so vague or ambiguous that the opposing party cannot respond to it, with a simple denial as permitted by Rule 8(b), with a pleading that can be interposed in good faith or without prejudice to himself. 5C *Federal Practice and Procedure: Civil 3d* § 1376 (2017).  [T]he generally accepted current construction of Rule 12(e).... is that the movant's ability to prepare a responsive pleading is to be measured in terms of **the minimal duty imposed on him by the federal pleading rules** and the possibility that he might be prejudiced by attempting to answer the pleading in its existing vague and ambiguous form. Thus, if the moving party is able to discharge her pleading obligation under the rules, a Rule 12(e) motion based on the belief that a better affirmative pleading by the opposing party will enable her to provide a more enlightened or accurate response will be denied." Id. (emphasis added).

Rule 12(e) is **designed to strike at unintelligibility rather than want of detail.** ... A motion for more definite statement should not be used to test an opponent's case by requiring him to allege certain facts or retreat from his allegations." Juneau Square Corp. vs. First Wisconsin National Bank of Milwaukee, 60 F.R.D. 46, 48 (D.C. Wis. 1973) (emphasis added). If the court is satisfied that the complaint provides enough information to frame a responsive pleading, a court should deny the Rule 12(e) motion and avoid delay in maturing the case. Bochenski v. M & T Bank, 2015 WL 1040281, *16 (D. Md. 2015),

Considering the liberal amendment policy of Rule 15, the "net result of granting a Rule 12(e) motion simply may be an increase in the time and effort expended by the litigants in refining the pleadings, with little accomplished in terms of circumscribing the scope of

1  discovery or defining the issues." <u>Michael v. Clark Equip. Co.</u>, 380 F.2d 351, 352 (2nd Cir.

2  1967) (reversing lower court's grant of 12(e) motion commenting that the "time spent in this

3  way [polishing the pleadings] is usually wasted.").

4  **B.      MOTIONS FOR MORE DEFINITE STATEMENTS ARE NOT TO BE**

5  **USED TO FLESH OUT FACTUAL DETAILS IN LIEU OF DISCOVERY**

6
7          Rule 12(e) motions are used only to procure information needed to frame a responsive

8  pleading, rather than as a substitute for discovery.  5C *Federal Practice and Procedure: Civil 3d*

9  § 1376 (2017).  Thus, the basis for granting a motion for more definite statement is

10  unintelligibility of the complaint, not lack of detail. <u>In re APF Company</u>, 274 B.R. 408 (D.C.

11  Del. 2001).   Since a motion for more definite statement is not a favorite of the law and the

12  matters sought are subject to discovery, which provides a more satisfactory method of

13  narrowing the issues, the defendant's motion for a more definite statement was denied in

14  <u>Thrasher vs. Missouri State Highway Comm 'n</u>, 534 F. Supp. 103 (D.C. Mo. 1981), *aff'd* 691

15  F.2d 504 (8th Cir. 1982), *cert. denied,* 460 U.S. 1043.

16
17          In the instant case, the issues raised by Defendants is not the Complaint is unintelligible,

18  but rather claiming the necessity for additional facts which can be ascertained in discovery.

19  **C.      THE COMPLAINT FILED BY PLAINTIFF HEREIN PLEADS MORE**

20  **THAN ENOUGH DETAIL IN FACT AND LAW TO PLACE**

21  **DEFENDANT ON CLEAR NOTICE OF THE CLAIMS AGAINST HIM**

22  **TO ENABLE DEFENDANT TO ANSWER IN GOOD FAITH AND**

23  **WITHOUT PREJUDICE**

24          1.      The Formation of the Pearl Agreements is not Uncertain

25          Defendant's claim that there is a failure of specificity when the agreements were entered

26  into does not preclude Defendant from responding.  Plaintiff alleged that the 2014 Pearl Loan

27  was entered into in or about December 2014.  That is sufficient for Defendant to determine

28

1   when the transaction occurred.  Second, it is disingenuous for Defendant to contend that it is

2   uncertain about the 2016 Pearl Loan when it attaches several documents relating to this loan in

3   its Request for Judicial Notice.  Hence, there is nothing uncertain about these transactions and

4   when they were entered into.  The remaining claims are virtually the same argument that were

5   raised in conjunction with the Fraud claim and are addressed therein.

6

7             2.     The Terms of the Agreement Can be Ascertained in Discovery

8          As discussed above, the allegations of the Complaint are sufficient for Defendant to

9   answer, and the additional terms will not prevent Defendant from answering the allegations of

10   the Complaint.  Further, as discussed above, for Defendant to claim that it is "in the dark" about

11   these loans is disingenuous when Defendant attaches to its Request for Judicial Notice the 2016

12   Pearl Loan documents.  Defendant clearly is aware of the terms of the agreements and is

13   feigning lack of knowledge.

14

15             3.     Plaintiff Can Ascertain More Detail Regarding the Transfers in Discovery

16          Defendant is meshing all of the transfers into one section and saying that it cannot

17   determine whether or not the amounts being demanded are preferential or fraudulent conveyed.

18   However, Defendant did not claim that Plaintiff failed to state a cause of action with regard to

19   these four claims.  Instead, there are four claims of action which are for different time frames –

20   the Third for Avoidance of Preferential Transfers Against Defendant Pearl (11 U.S.C. Section

21   547); the Fifth Claim for Avoidance and Preservation of Lien, Claims against Defendant Pearl

22   (11 U.S.C. Sections 502, 506, 544 and 510(c)); Sixth Claim for Avoidance of Fraudulent

23   Transfers Against Defendant Pearl (11 U.S.C. Section 548); and Seventh Claim for Avoidance

24   of Fraudulent Transfers against Defendant Pearl (11 U.S.C. Sections 544 and 548).

25

26          Plaintiff claims that they must guess at the amount and timing of the transfers, however

27   each claim asserts the amounts were taken daily by Defendant.  At paragraph 29, Plaintiff

28   alleges that there were 120 equal installments of $2,450 with regard to the 2014 Pearl Loan; at

paragraph 30, Plaintiff alleges that there were supposed to be 120 equal installments of $1,399. These paragraphs were incorporated into the claims. Certainly, Defendant knows based upon the various claims asserted against him the amount of those transfers that it received from Plaintiff and whether they are within the 90 days, two years, or four years-periods. There is nothing uncertain about these claims, and if there are any questions regarding the facts, they can be ascertained in discovery.

4.    The Failure to Comply with Laws and Regulations are Not Uncertain to Prevent Defendant from Answering the Complaint

Except for those claims which directly relate to the violation of particular statutes (i.e. the Fourteenth Claim for Violation of N.Y. General Business Law Section 349; The Fifteenth Claim for Violation of California Business and Professions Code Section 17200; and The Seventeenth Claim for Negligence Per Se – Violation of California Finance Lending Law), the Defendant can ascertain in discovery the laws which Plaintiff contends were violated. Certainly, if Defendant is a licensed lender, it should be fully aware of the laws which federal and state laws it is required to which is must comply.

## IV.    IF THERE ARE ANY DEFECTS IN THE COMPLAINT, PLAINTIFF SHOULD BE ENTITLED TO AMEND IT

Rule 15(a) has been interpreted to mean that the Court must grant leave to amend at least once before exercising its discretion to dismiss under Rule 12(b)(6). The Ninth Circuit in <u>Doe v. United States</u>, 58 F.3d 494, 496–97 (9th Cir. 1995) stated:

"Under Fed.R.Civ.Proc. 15(a), "a party may amend his pleading once as a matter of course at any time before a responsive pleading is served." This court has held that "a motion to dismiss is not a 'responsive pleading' within the meaning of the Rule. Neither the filing nor granting of such a motion before answer terminates the right to amend; an order of dismissal denying leave to amend at that stage is improper." *Schreiber*

1    *Distributing v. Serv–Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir.1986)."

2    Even if a Court may have doubts regarding a claim, leave to amend would be required before

3    dismissal can be granted so as to allow a Plaintiff to develop the proof of its case.  As such, if

4    the Court is inclined to grant any portion of this Motion, then it is respectfully requested that

5    such be done with leave to amend.

6

7    **V.    CONCLUSION**

8            Based upon the above, it is respectfully requested that this Court deny the Motion in its

9    entirety.  However, if the Court may be inclined to grant any portion of the Motion, then

10   Plaintiff respectfully request that it be granted leave to amend the claims.

11   DATED: March 30, 2017                    LAW OFFICES OF ROBERT M. YASPAN

12

13                                           By:_____

14                                               ROBERT M. YASPAN
                                                 General Counsel for Debtor-in-Possession/
15                                               Plaintiff

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 21700 Oxnard Street, Suite 1750, Woodland Hills CA 91367

A true and correct copy of the foregoing document entitled PLAINTIFF'S OPPOSITION TO MOTION (1) TO DISMISS COMPLAINT AND (2) FOR A MORE DEFINITE STATEMENT will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On March 30, 3017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Valerie Bantner Peo**    vbantnerpeo@buchalter.com
- **United States Trustee (RS)**    ustpregion16.rs.ecf@usdoj.gov
- **Robert M Yaspan**    court@yaspanlaw.com, tmenachian@yaspanlaw.com

**2. SERVED BY UNITED STATES MAIL**:
On March 30, 2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Attorney for Pearl Beta Funding
Robert Zadek
BuchalterNemer
55 Second Street, Suite 1700
San Francisco, CA 94105-3493

Attorney for Pearl Beta Funding LLC
Ariel Bouskila Esq
MCA Servicing – Counsel
40 Exchange Place, Suite 1306
New York, NY 10005

Honorable Mark S. Wallace
United States Bankruptcy Court
Central District of California
411 West Fourth Street, Suite 6135
Courtroom 6C
Santa Ana, CA 92701-4593

Everett L. Green, Esq.
United States Department of Justice
Office of United States Trustee
3801 University Avenue, Suite 720
Riverside, CA 92501

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2012_                                                      **F 9013-3.1.PROOF.SERVICE**

Merchant Source Inc
110 Jericho Tpke., Suite 212
Floral Park, NY 11001

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on           I served the following
persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service
method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal
delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 03/30/2017 | Tatyana Menachian | |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                      F 9013-3.1.PROOF.SERVICE