1  BUCHALTER
   A Professional Corporation
2  DENISE H. FIELD (SBN: 111532)
   VALERIE BANTNER PEO (SBN: 260430)
3  BRANDON M. CARR (SBN: 280959)
   55 Second Street, Suite 1700
4  San Francisco, CA 94105-3493
   Telephone: (415) 227-0900
5  Fax: (415) 227-0770
   Email: vbantnerpeo@buchalter.com
6
   Attorneys for Defendant
7  PEARL BETA FUNDING, LLC

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                    RIVERSIDE DIVISION

11  In re:                          | Case No.: 6:16-bk-20446 (MW)

12                                  | Chapter: 11
    BIODATA MEDICAL LABORATORIES,
13  INC.,

14              Debtor.

15  

16  BIODATA MEDICAL LABORATORIES,    | Adv. Case No. 6:16-ap-01298
    INC.,
17                                   | **MEMORANDUM OF POINTS AND**
18              Plaintiff,           | **AUTHORITIES IN SUPPORT OF PEARL**
                                     | **BETA FUNDING, LLC'S MOTION TO**
19                                   | **DISMISS AMENDED COMPLAINT**

20       vs.                        | Date:     August 30, 2017
                                    | Time:     9:00 a.m.
21
    PEARL BETA FUNDING, LLC; and    | Location:  Video Courtroom 225
22  MERCHANT SOURCE, INC.           |            3420 Twelfth Street
                                    |            Riverside, CA 92501
23
            Defendant.             |            Or
24
                                    |            411 West Fourth Street
25                                  |            Court 6C
                                    |            Santa Ana, CA 92701
26
                                    | **[Appearances may be made at either**
27                                  | **courtroom]**

28

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

# TABLE OF CONTENTS

**Pages**

I.    INTRODUCTION .......................................................................................................... 1

II.    THE COURT SHOULD DISMISS THE ACTION WITH PREJUDICE FOR
FAILURE TO STATE A CLAIM UNDER FRCP 12(B)(6)............................................ 3

    A.    Biodata's Complaint Fails To State A Claim For Relief Against Pearl.................. 3

    B.    Biodata's Claims Premised On The Allegation That The Agreement Is
Usurious Fail As A Matter Of Law........................................................................ 4

        1.    Claims Based on California Usury Law Must be Dismissed Without
Leave to Amend Because This Court has Expressly Ordered that
the Agreement Is Not Usurious Under California Law and Pearl is
exempt from the Operation of Usury ........................................................ 5

        2.    The Agreement Is Not Usurious Under New York Law and by the
Express Provisions of the Agreement ....................................................... 5

    C.    Biodata's 1st Claim For Declaratory Relief Should Be Dismissed For
Failure To State A Claim ....................................................................................... 8

    D.    Biodata's 15th Claim For Relief For Fraud Should Be Dismissed For
Failure To State A Claim ..................................................................................... 10

    E.    Biodata's 3rd, 4th, 9th, and 10th Claims Should Be Dismissed For Failure To
State A Claim ....................................................................................................... 13

    F.    Biodata's 5th And 6th Claims Should Be Dismissed For Failure To State A
Claim.................................................................................................................... 13

    G.    Biodata's 2nd Claim Should Be Dismissed For Failure To State A Claim........... 14

    H.    Biodata's 8th Claim Should Be Dismissed For Failure To State A Claim ............ 15

III.    CONCLUSION.......................................................................................................... 15

**MPA ISO MOTION DISMISS AMENDED COMPLAINT - CASE NO.: 6:16-bk-20446 (MW)**

BN 28734081V6

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*April Enterprises, Inc. v. KTTV,*
(1983) 147 Cal.App.3d 805 .................................................................................. 8

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................................ 3

*Bell Atlantic v. Twombly,*
550 U.S. 544 (2007) ............................................................................................ 3

*Chartock v. National Bank of California,*
(Sup.Ct.) 2017 NY Slip Op 30357(U), 1 .............................................................. 7

*Conley v. Gibson,*
355 U.S. 41 (1957) .............................................................................................. 3

*Donatelli v. Siskind,*
170 A.D.2d 433 (N.Y. App. Div. 1991) ................................................................ 6

*Dumas v. Kipp,*
90 F.3d 386 (9th Cir. 1996) ................................................................................ 4

*Fisher v. Tice,*
(S.D.N.Y. July 5, 2016, No. 15cv955 (LAK) (DF)) 2016 U.S.Dist.LEXIS 87792, 38 .............. 9

*Holtz v. United Plumbing & Heating Co.,*
(1957) 49 Cal.2d 501 .......................................................................................... 8

*IBIS Capital Group, LLC v. Four Paws Orlando LLC,*
(Sup.Ct.) 2017 NY Slip Op 30477(U), 10 ............................................................. 7

*In re Food Catering & Housing, Inc.,*
(9th Cir. 1992) 971 F.2d 396 .............................................................................. 14

*Kidz Cloz, Inc. v. Officially for Kids, Inc.,*
(S.D.N.Y. 2004) 320 F.Supp.2d 164 .................................................................... 9

*Matter of Lynx Strategies LLC v. Ferreira,*
(Sup.Ct.) 2010 NY Slip Op 51159(U), 4 .............................................................. 6

*Menjivar v. Wells Fargo Bank, N.A. (In re Menjivar),*
2014 Bankr. LEXIS 371 (B.A.P. 9th Cir. Jan. 28, 2014) ...................................... 4

*Moore v. Kayport Package Express,*
885 F.2d 531 (9th Cir. 1989) .............................................................................. 11

*Morici v. HashFast Techs. LLC,*
(N.D. Cal. Feb. 27, 2015, No. 5:14-cv-00087-EJD) 2015 U.S. Dist. LEXIS 24251, 11 .......... 12

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

*Peterson v. Atlanta Housing Authority,*
    998 F.2d 904 (11th Cir. 1993)..................................................................4

*Professional Merchant Advance Capital, LLC v. Your Trading Room, LLC,*
    (Sup.Ct.) 2012 NY Slip Op 33785(U), 13..................................................6

*Quatrochi v. Citibank, N.A.,*
    210 AD 2d 53 (1st Dept 1994)..................................................................8

*Reddy v. Litton Indus.,*
    912 F.2d 291 (9th Cir. 1990)..................................................................4

*Retail Capital, LLC v. Spice Intentions Inc.,*
    (Sup.Ct.) 2016 NY Slip Op 32614(U), 2..................................................7

*Seidel v. 18 E. 17th St. Owners, Inc.,*
    79 N.Y.2d 735 (N.Y. 1992)..................................................................6

*Shroyer v. New Cingular Wireless Servs.,*
    622 F.3d 1035 (9th Cir. 2010)..................................................................3

*Starr v. Baca,*
    652 F.3d 1202 (9th Cir. 2011)..................................................................4

*Strom v. United States,*
    641 F.3d 1051 (9th Cir. 2011)..................................................................3

*Swartz v. KPMG LLP,*
    476 F.3d 756 (9th Cir. 2007)..................................................................11

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003)..................................................................11

**Cases**

*April Enterprises, Inc. v. KTTV,*
    (1983) 147 Cal.App.3d 805..................................................................8

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..................................................................3

*Bell Atlantic v. Twombly,*
    550 U.S. 544 (2007)..................................................................3

*Chartock v. National Bank of California,*
    (Sup.Ct.) 2017 NY Slip Op 30357(U), 1..................................................7

*Conley v. Gibson,*
    355 U.S. 41 (1957)..................................................................3

*Donatelli v. Siskind,*
    170 A.D.2d 433 (N.Y. App. Div. 1991)..................................................6

*Dumas v. Kipp,*
    90 F.3d 386 (9th Cir. 1996)..................................................................4

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

*Fisher v. Tice,*
  (S.D.N.Y. July 5, 2016, No. 15cv955 (LAK) (DF)) 2016 U.S.Dist.LEXIS 87792, 38 ............. 9

*Holtz v. United Plumbing & Heating Co.,*
  (1957) 49 Cal.2d 501 ...................................................................................................... 8

*IBIS Capital Group, LLC v. Four Paws Orlando LLC,*
  (Sup.Ct.) 2017 NY Slip Op 30477(U), 10 ...................................................................... 7

*In re Food Catering & Housing, Inc.,*
  (9th Cir. 1992) 971 F.2d 396........................................................................................... 14

*Kidz Cloz, Inc. v. Officially for Kids, Inc.,*
  (S.D.N.Y. 2004) 320 F.Supp.2d 164................................................................................ 9

*Matter of Lynx Strategies LLC v. Ferreira,*
  (Sup.Ct.) 2010 NY Slip Op 51159(U), 4 ........................................................................ 6

*Menjivar v. Wells Fargo Bank, N.A. (In re Menjivar),*
  2014 Bankr. LEXIS 371 (B.A.P. 9th Cir. Jan. 28, 2014)................................................ 4

*Moore v. Kayport Package Express,*
  885 F.2d 531 (9th Cir. 1989)........................................................................................... 11

*Morici v. HashFast Techs. LLC,*
  (N.D. Cal. Feb. 27, 2015, No. 5:14-cv-00087-EJD) 2015 U.S. Dist. LEXIS 24251, 11 .......... 12

*Peterson v. Atlanta Housing Authority,*
  998 F.2d 904 (11th Cir. 1993)......................................................................................... 4

*Professional Merchant Advance Capital, LLC v. Your Trading Room, LLC,*
  (Sup.Ct.) 2012 NY Slip Op 33785(U), 13 ...................................................................... 6

*Quatrochi v. Citibank, N.A.,*
  210 AD 2d 53 (1st Dept 1994)......................................................................................... 8

*Reddy v. Litton Indus.,*
  912 F.2d 291 (9th Cir. 1990)........................................................................................... 4

*Retail Capital, LLC v. Spice Intentions Inc.,*
  (Sup.Ct.) 2016 NY Slip Op 32614(U), 2 ........................................................................ 7

*Seidel v. 18 E. 17th St. Owners, Inc.,*
  79 N.Y.2d 735 (N.Y. 1992) ............................................................................................. 6

*Shroyer v. New Cingular Wireless Servs.,*
  622 F.3d 1035 (9th Cir. 2010)......................................................................................... 3

*Starr v. Baca,*
  652 F.3d 1202 (9th Cir. 2011)......................................................................................... 4

*Strom v. United States,*
  641 F.3d 1051 (9th Cir. 2011)......................................................................................... 3

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007)...................................................................................... 11

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003).................................................................................. 11

**Statutes**

Cal. Civ. Code
    § 3439.05......................................................................................................................... 13
    § 3439.09......................................................................................................................... 13

Cal. Financial Code
    § 22002............................................................................................................................... 5

N.Y. Gen. Oblig. Law
    § 5-501................................................................................................................................ 5

N.Y. Penal Law
    § 190.40.............................................................................................................................. 5

United States Code
    Title 11, § 105(a) .......................................................................................................... 15
    Title 11, § 544 ............................................................................................................... 13
    Title 11, § 544(b) .......................................................................................................... 13
    Title 11, § 547 ............................................................................................................ 2, 14
    Title 11, § 547(b) .......................................................................................................... 14
    Title 11, § 547(c) ........................................................................................................... 15
    Title 11, § 547(c)(1) ...................................................................................................... 14
    Title 11, § 547(c)(2) ...................................................................................................... 14
    Title 11, § 548 ............................................................................................................... 13
    Title 11, § 548(a)(1)(B)(i)............................................................................................ 13

United States Code,
    Title 11, § 105(a) .......................................................................................................... 15

**Rules**

F.R.C.P.
    Rule 9(b) ................................................................................................... 2, 11, 12, 13
    Rule 12(b)(6)....................................................................................................................... 3

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

**MPA ISO MOTION DISMISS AMENDED COMPLAINT - CASE NO.: 6:16-bk-20446 (MW)**

BN 28734081V6

## I.    INTRODUCTION

Plaintiff Biodata Medical Laboratories, Inc.'s ("Biodata's" or "Plaintiff's" ) Amended Complaint should be dismissed for failure to state a claim because it not only disregards and fails to comply with this Court's order, but also does not allege any new facts to remedy the fatal deficiencies of its original complaint.

Biodata's Amended Complaint arises out of allegations that a 2016 merchant agreement in which Defendant Pearl Beta Funding, LLC ("Pearl") purchased certain of Biodata's future accounts receivables (the "Agreement") violates California usury laws.  On April 13, 2017, this Court granted Pearl's Motion to Dismiss and specifically found that Pearl is:

> exempt from the operation of California usury law… [and] Biodata may file an amended complaint that is consistent with this order…

Despite this Court's order, Biodata persists in alleging California usury in ten of its fifteen claims in the Amended Complaint, alleging for example that "Pearl's alleged registration under California Finance Lender Law does not apply in this case … [and] Defendants are estopped from relying on any alleged exemption to California usury law."  Amended Complaint, ¶ 42(E)-(G).[1]

Moreover, Plaintiff fails to state facts to remedy the deficiencies of the first dismissed complaint, instead filing an Amended Complaint with new "facts" which are nothing more than conclusions, speculation, and unresolved questions.   For instance, in its fraud claim in the Amended Complaint, Biodata's new specific "facts" of an alleged misrepresentation are mere speculation based on quoting single words like  "collection" or "renew" or "consolidation" allegedly from e-mails between Pearl, its broker Merchant Source, Inc. ("MSI"), and Biodata.  Amended Complaint, ¶ 112(C).  Biodata fails to attach the e-mails or even allege the context of these single words, evidentially hoping that the apparent use of these single words in e-mails alleges facts of a misrepresentation.  Such use of single words falls far short of the heightened pleading requirements of a misrepresentation required to plead fraud.

Unable to state a claim for relief, Biodata now speculates that the Agreement somehow

---

[1] Biodata's 1st, 3rd, 4th, 7th, 10th, 11th, 12th, 13th, 14th, and 15th claims for relief are all premised on allegations of usury under California law.

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

1  constitutes a joint venture without alleging the elements of a claim for relief. In the Amended

2  Complaint, Biodata merely speculates and asks whether certain aspects of the Agreement "could

3  be consistent with a joint venture." Biodata fails to allege the required elements of a joint venture

4  under California or New York law and thus the claims based on this conjecture necessarily fail.

5  Amended Complaint, ¶ 43.

6          Biodata's Amended Complaint thus disregards an order of this Court, provides no new

7  substantive allegations supporting its claims, and should be dismissed for the following reasons:

8      (1)   Biodata alleges that the Agreement was usurious. However, the Court already
            ruled that the Agreement was <u>not</u> usurious under California law. Furthermore, the
9            Agreement cannot be usurious under New York law, because under the
            Agreement's express provisions and New York law, Plaintiff fails to allege that the
10           Agreement is a loan. The Agreement expressly provides: ("[Biodata] and [Pearl]
            agree that the Purchase Price under this Agreement is in exchange for the
11           Purchased Amount, and that such Purchase Price is not intended to be nor shall it
            be construed as a loan from [Pearl] to [Biodata].") Amended Complaint, Exh. 1,
12           Agreement, p. 1. Since Biodata's 1st, 3rd, 4th, 7th, 10th, 11th, 12th, 13th, 14th, and 15th
            claims for relief are all premised on allegations of usury, Biodata fails to state a
13           claim as to each;

14

15     (2)   Biodata's 15th claim for relief should be dismissed for failure to state a claim
            because Biodata fails to plead fraud with sufficient particularity as required by the
16           heightened pleading standard of Rule 9(b);

17     (3)   Biodata's 1st claim for declaratory relief asks that the Court find the Agreement is
            a loan, or in the alternative that it is a joint venture. This claim should be
18           dismissed for failure to state a claim because the agreement is not a loan, and
            because Biodata's speculative conjecture that certain aspects of the agreement
19           "could be consistent with a joint venture" fails to allege the requisite elements of a
            joint venture under California or New York law. Amended Complaint, ¶ 43;
20

21     (4)   Biodata's 3rd, 4th, 9th, and 10th claims for relief all seek to avoid a purported lien.
            However, these claims should be dismissed for failure to state a claim because it is
22           undisputed that Pearl holds no lien in this matter;

23

24     (5)   Biodata's 5th and 6th claims for avoidance of fraudulent transfer each fail because
            the Agreement shows that reasonable value was exchanged;

25     (6)   Biodata's 2nd claim for avoidance of preferential transfer should be dismissed
            because the Amended Complaint acknowledges that Biodata's payments to Pearl
26           under the Agreement fall within an exception to 11 U.S.C. Section 547 because
            they were made in the ordinary course of business; and
27

28     (7)   Biodata's 8th claim for permanent injunction should be dismissed because Biodata

fails to allege facts warranting a permanent injunction. Since all of Biodata's other claims for relief as to the Agreement fail, so too does their claim seeking to enjoin the Agreement's enforcement.

Accordingly, Biodata cannot state a claim for relief as to any of its claims. Biodata has already been given a chance to remedy the fatal deficiencies in the complaint, but has failed to do so. Pearl requests that the Court grant its motion to dismiss without leave to amend.

## II.    THE COURT SHOULD DISMISS THE ACTION WITH PREJUDICE FOR FAILURE TO STATE A CLAIM UNDER FRCP 12(b)(6).

### A.    Biodata's Complaint Fails to State a Claim For Relief Against Pearl

A motion pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims stated in the Complaint, measured by the pleading standards set forth in the Civil Rules and any relevant statute. *See Strom v. United States*, 641 F.3d 1051, 1067 n.17 (9th Cir. 2011). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*") (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*")). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint must give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Dismissal under Rule 12(b)(6) is proper "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs.*, 622 F.3d 1035, 1041 (9th Cir. 2010). The Ninth Circuit has summarized the standard for evaluating a motion to dismiss brought under Rule 12(b)(6) as follows:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

**MPA ISO MOTION DISMISS AMENDED COMPLAINT - CASE NO.: 6:16-bk-20446 (MW)**

BN 28734081V6

1    *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

2        It is not this Court's duty to rewrite the Complaint. *Peterson v. Atlanta Housing*

3    *Authority,* 998 F.2d 904, 912 (11th Cir. 1993) (affirming dismissal of claims where complaint is

4    devoid of reference to any injury inflicted on plaintiff by defendant and which fails to give fair

5    notice of claim). When amendment would be futile, dismissal may be ordered with prejudice.

6    *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990); *Dumas v. Kipp,* 90 F.3d 386, 393 (9th

7    Cir. 1996). "Amendment is futile when it is clear that amendment would not have remedied the

8    complaint's fatal deficiencies." *Menjivar v. Wells Fargo Bank, N.A. (In re Menjivar)*

9    2014 Bankr. LEXIS 371, at *16-17 (B.A.P. 9th Cir. Jan. 28, 2014).

10    **B.    Biodata's Claims Premised on the Allegation that the Agreement Is Usurious**

11             **Fail as a Matter of Law**

12        Biodata's Amended Complaint against Pearl is premised on the allegation that the

13    Agreement between Biodata and Pearl is usurious. Specifically, Biodata's 1st, 3rd, 4th, 7th, 10th,

14    11th, 12th, 13th, 14th, and 15th claims for relief are all based on allegations of usury:

15        • 1st Claim: "The Pearl Loan is usurious under both California and New York law."
            Amended Complaint, ¶ 39, N.
16
17        • 3rd Claim: Pearl is a "usurious lender that committed wrongful and illegal acts."
            *Id.* ¶ 52.

18        • 4th Claim: Pearl is a "usurious lender." *Id.* ¶ 54.

19        • 7th Claim: "The Pearl Loan is usurious per se." *Id.* ¶ 71.

20        • 10th Claim: Pearl is a "usurious lender." *Id.* ¶ 86.

21        • 11th Claim: Confession of Judgment was obtained "though in illegal usurious loan
            among other issues." *Id.* ¶ 89.
22
        • 12th Claim: Biodata "paid interest in excess of maximum civil usury rate of 16%
23          and criminal usury rate of 25% under New York law and the maximum usury rate
            of 10% under California law." *Id.* ¶ 93.
24
25        • 13th Claim: "Defendants Pearl and MSI conspired with and acted in concert with
            each other to enter into a criminally usurious loan with Plaintiff." *Id.* ¶ 97.

26        • 14th Claim: Pearl violated "California and New York usury law." *Id.* ¶ 106.

27        • 15th Claim: The Pearl Loans are usurious under both California and New York
            law." *Id.* ¶ 114, K.
28

All of these claims premised on usury fail. This Court has already ruled that Pearl is "exempt from the operation of California usury because it holds a California finance lender license. Moreover, the Agreement expressly provides that it is not a loan and under New York law, Plaintiff fails to allege that the Agreement is a loan.

1.      **Claims Based on California Usury Law Must be Dismissed Without Leave to Amend Because This Court Has Expressly Ordered that the Agreement Is Not Usurious Under California Law and Pearl Is Exempt From the Operation of Usury**

Importantly, Biodata has flagrantly disregarded this Court's order by alleging that the Agreement is usurious under California law even though the Court specifically found that "Pearl Beta holds a valid California Finance Lender and Broker license and is therefore exempt from the operation of California usury law pursuant to California Financial Code § 22002." *See* Order Granting Motion to Dismiss Complaint. Biodata was granted leave to amend "consistent with this order." *Id.* Despite this clear order, Biodata persists in alleging a California usury claim, using it to form the basis of no less than ten of its fifteen causes of action, and alleging, for example, that:

> The Pearl Loan is usurious under both California and New York law… and violated both the letter and intent of California Finance Lender law and therefore Pearl did not rely and cannot claim it can rely on any alleged exemptions allegedly available to a finance lender in California.

Amended Complaint ¶ 27(N)-(0). Accordingly, Pearl requests that the Court dismiss all of Biodata's claims based on usury, without leave to amend.

This Court has already found that "Pearl Beta holds a valid California Finance Lender and Broker license and is therefore exempt from the operation of California usury law pursuant to California Financial Code § 22002." Thus, the Agreement is exempt from California usury and any usury based claims against Pearl fail.

2.      **The Agreement Is Not Usurious Under New York Law and by the Express Provisions of the Agreement**

New York usury laws apply only to a "loan or forbearance of any money or other property." N.Y. Penal Law § 190.40; *see also* N.Y. Gen. Oblig. Law § 5-501 ("No person or

1  corporation shall, directly or indirectly, charge, take or receive any money, goods or things in

2  action as interest on the loan or forbearance of any money, goods or things in action at a rate

3  exceeding the rate above prescribed."). Thus, under the text of New York's criminal and civil

4  statutes the existence of a loan is a necessary element of a usury claim. The New York Court of

5  Appeals has confirmed this principle: "[u]sury laws apply only to loans or forbearances, not

6  investments. If the transaction is not a loan, there can be no usury, however unconscionable the

7  contract may be." *Seidel v. 18 E. 17th St. Owners, Inc.*, 79 N.Y.2d 735, 744 (N.Y. 1992); *see also*

8  *Donatelli v. Siskind*, 170 A.D.2d 433, 434 (N.Y.App.Div. 1991) ("It is well established that there

9  can be no usury in the absence of a loan or forbearance of money").

10      Here, the Agreement by its own terms is not a loan: "[Biodata] and [Pearl] agree that the

11  Purchase Price under this Agreement is in exchange for the Purchased Amount, and that such

12  Purchase Price is not intended to be nor shall it be construed as a loan from [Pearl] to [Biodata]."

13  Amended Complaint, Exh. 1, Agreement, p. 1.

14      In addition to the Agreement's terms, the contingent nature of payment by Biodata under

15  the Agreement shows that the Agreement is not a loan. *See Professional Merchant Advance*

16  *Capital, LLC v. Your Trading Room, LLC,* (Sup.Ct.) 2012 NY Slip Op 33785(U), at *13 ("Where

17  payment or enforcement rests upon a contingency, the agreement is valid even though it provides

18  for a return in excess of the legal rate of interest.*"); Professional Merchant Advance Capital, LLC*

19  *v. Your Trading Room, LLC* (Sup.Ct.) 2012 NY Slip Op 33785(U), at *13 ("Unless a principal

20  sum advanced is repayable absolutely, the transaction is not a loan. Where payment or

21  enforcement rests upon a contingency, the agreement is valid even though it provides for a return

22  in excess of the legal rate of interest.") (internal citations omitted); *Matter of Lynx Strategies LLC*

23  *v. Ferreira* (Sup.Ct.) 2010 NY Slip Op 51159(U), at *4 ("The concept of usury applies to loans,

24  which are typically paid at a fixed or variable rate over a term. The instant transaction, by

25  contrast, is an ownership interest in proceeds for a claim, contingent on the actual existence of

26  any proceeds.").

27      Here, the Agreement expressly provides that "payment is conditioned upon [Biodata]'s

28  sale of products and services, and the payment therefore by [Biodata]'s customers." Amended

1   Complaint, Exh. 1, Agreement, ¶ 1.10.  Moreover, Biodata highlights the contingent nature of

2   payment under the Agreement in its Amended Complaint.  *See*  Amended Complaint, ¶ 29(D)

3   ("The Loan Documentation provides for the assumption of some alleged risk of bankruptcy,

4   'going out of business', or that the business may 'slow down or fail.'").

5        In addition, the Agreement's express provision for adjusted monthly payment is a

6   hallmark of contingent payment.  *See* Amended Complaint, Exh. 1, Agreement, ¶ 1.4 ("[Biodata]

7   may request that [Pearl] reconcile [Biodata]'s actual receipts and adjust the Specific Amount so

8   that the amount received by [Pearl] in the future more closely represents the Specified

9   Percentage."); *Chartock v. National Bank of California,* (Sup.Ct.) 2017 NY Slip Op 30357(U), at

10  * 1-2, 4 (a purchase and sale agreement with payments "reconciled monthly such that the ultimate

11  amount paid would reflect the agreed-upon portion of the [purchased] deposits" is not a loan but

12  instead "is unquestionably a purchase of receivables, not a loan, to which the laws of usury

13  apply."); *IBIS Capital Group, LLC v. Four Paws Orlando LLC,* (Sup.Ct.) 2017 NY Slip Op

14  30477(U), at *10 (payment is contingent when payment "amount adjusted every two weeks to

15  reflect the Business Defendant's changing collection of sales proceeds.").

16       Furthermore, the Agreement's express lack of time frame for repayment is another

17  hallmark of contingent payment.  *See* Amended Complaint, Exh. 1, Agreement, ¶ 1.2 ("This

18  Agreement shall remain in full force and effect until the entire Purchase Amount and any other

19  amounts due are received by [Pearl] as per the terms of this Agreement."); *IBIS Capital Group,*

20  *LLC v. Four Paws Orlando LLC, supra* 2017 NY Slip Op 30477(U), at *9 (a purchase and sale

21  agreement's "lack of a specific ending date is consistent with the contingent nature of each and

22  every collection of future sales proceeds" and thus the transaction is not a loan); *Retail Capital,*

23  *LLC v. Spice Intentions Inc.* (Sup.Ct.) 2016 NY Slip Op 32614(U), at *2, 7 (where, "[t]he

24  agreement does not provide for a fixed payment term and provides for the plaintiff's collection of

25  sales proceeds to fluctuate with the actual revenue of the defendants' business," the court held that

26  "the clear terms of the agreement state explicitly that the transaction between the parties was not a

27  loan.").

28       As shown above, the express terms of the Agreement provide that payment is contingent,

1  and therefore Biodata fails to state a claim for usury under New York law.[2]

2  **C.     Biodata's 1st Claim For Declaratory Relief Should Be Dismissed For Failure**

3  **To State a Claim**

4  Biodata's first claim for declaratory relief asks that the Court find the Agreement is a

5  usurious loan, or in the alternative, that it is "a joint venture between Plaintiff and Defendants

6  and/or a purchase of equity interest in Plaintiff, and/or an entirely different and exotic and/or

7  hybrid form of transaction."[3]    Amended Complaint, ¶ 40.    However, as shown above, the

8  Agreement is not a usurious loan.    Moreover, the Agreement cannot be a joint venture under

9  California or New York law because neither party intended to enter into a joint venture, and the

10  Agreement does not meet the other requirements of a joint venture.

11  Under California law,

12  > Whether a joint venture exists must largely depend upon

13  > determining the intention of the parties from the facts of a particular
   > case because there is no certain and all-inclusive definition to be

14  > applied. A joint venture has been defined in various ways but most
   > frequently perhaps as an association of two or more persons who

15  > combine their property, skill or knowledge to carry out a single
   > business enterprise for profit. It has generally been recognized that

16  > in order to create a joint venture there must be an agreement
   > between the parties under which they have a community of interest,

17  > that is, a joint interest, in a common business undertaking, an
   > understanding as to the sharing of profits and losses, and a right of

18  > joint control. Such an agreement, however, need not be formal or
   > definite in every detail relating to the respective rights and duties of

19  > the parties but may be implied as a reasonable deduction from their
   > acts and declarations.

20  *Holtz v. United Plumbing & Heating Co.* (1957) 49 Cal.2d 501, 506-07; *accord April Enterprises,*

21  *Inc. v. KTTV* (1983) 147 Cal.App.3d 805, 819.

22  _____

23  [2] Any allegation that the Agreement is a loan, should not be taken as true for purposes of this
   motion because it contradicts the Agreement attached to the Amended Complaint.  Though, a

24  plaintiff's plausible allegations in the complaint must be taken as true, "allegations consisting of
   bare legal conclusions, as well as factual claims either inherently incredible or contradicted by

25  documentary evidence, are not entitled to such consideration."  *Quatrochi v. Citibank, N.A.,* 210
   AD 2d 53, 53 (1st Dept. 1994) (internal citation omitted). Biodata's claim that the Agreement

26  constitutes a loan is contradicted by the clear terms of the agreement and thus may not be given a
   presumption of truth.

27  [3] Biodata alleges the undefined words "equity participation relationship" and "exotic hybrid
   transaction" which appear to be nothing more than unexplained conclusions and speculation

28  which are not based on facts or law.

New York law looks to essentially the same factors as California to determine whether a joint venture exists:

> a plaintiff pleading the existence of a joint venture must establish that: (1) two or more parties entered an agreement to create an enterprise for profit, (2) the agreement evidences the parties' mutual intent to be joint venturers, (3) each party contributed property, financing, skill, knowledge, or effort to the venture, (4) each party had some degree of joint management control over the venture, and (5) there was a provision for the sharing of both losses and profits.

*Kidz Cloz, Inc. v. Officially for Kids, Inc.* (S.D.N.Y. 2004) 320 F.Supp.2d 164, 171; *accord Fisher v. Tice* (S.D.N.Y. July 5, 2016, No. 15cv955 (LAK) (DF)) 2016 U.S.Dist.LEXIS 87792, at *38-39.

Here, Biodata's Amended Complaint fails to allege any facts that would constitute a joint venture. Biodata asks the Court and the parties if the agreement "could be consistent with a joint venture."[4] Amended Complaint, ¶ 43. Such conjecture amounts to no more than speculation and fails to affirmatively allege facts showing the Agreement is a joint venture.

Furthermore, the parties could not have entered into a joint venture because neither side intended to form such a relationship as evidenced by the express provisions of the Agreement, which defines the relationship of the parties. The terms of the Agreement are clear that Biodata is entering into an Agreement with Pearl by "selling a portion of a future revenue stream to [Pearl] at a discount." Amended Complaint, Exh. 1, Agreement, p.1.

Moreover, the Agreement does not in any way provide for joint interest, joint control, or a sharing of profits and losses. In fact, the Agreement provides that Pearl "has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created." Amended Complaint, Exh. 1, Agreement, §1.10.

In addition, the express provisions of the Agreement do no give Pearl control of Biodata's business. Biodata alleges that the Agreement "provides for participation in control by providing that Pearl have all 'information, authorization, and passwords' for all of Plaintiffs accounts" as

---

[4] Confusingly, Biodata inconsistently alleges: at times the relationship "could be consistent with a joint venture" whereas at times it is "consistent with a joint venture." Amended Complaint, ¶ 43.

1   well as other forms of control regarding Biodata's payments to Pearl.  Amended Complaint, ¶ 43

2   (G)-(M).  However, the Agreement only provides for a method of payment by Biodata to Pearl

3   and does not give Pearl actual control of the operation of Biodata's business.  *See* Amended

4   Complaint, Exh. 1, Agreement, ¶ 1.1.  Biodata expressly agreed that it "authorizes PBF [Pearl] to

5   ACH debit the Specific Amount from the Account on a daily basis" and that Biodata will execute

6   an agreement acceptable to Pearl for the electronic funds transfer.  Amended Complaint, Exh. 1,

7   Agreement, p. 1 and §1.1.

8         In addition, the Agreement is a sale of receipts, and does not provide for a sharing of

9   profits and losses.  See Agreement, ¶ 1.10 ("[Biodata] agrees that the Purchase Price is in

10  exchange for the Receipts pursuant to this Agreement.").  Biodata alleges that the Agreement

11  "provides for Pearl's participation in [Biodata's] business to be raised to 100% of the 'Receipts'

12  in the event of some breaches which could be consistent with a joint venture, equity or other

13  exotic hybrid relationship."  Amended Complaint, ¶ 43(E).  However, the Agreement provides

14  that Pearl will collect the entire purchase amount in the event of default, and not provide for

15  "participation" in Biodata's business.  *See* Amended Complaint, Exh. 1, Agreement, ¶ 1.2.

16        Moreover, Pearl did not agree to "contribute" to a potential joint venture, only to purchase

17  future receipts from Biodata.  *See* Agreement, ¶ 1.10.  Biodata fails to allege a contribution to a

18  potential joint venture, and no such contribution is mentioned in the Agreement.

19        Also, there is no requisite common interest in a joint venture. Biodata alleges that "there

20  are no disclaimers of a joint venture or equity participation relationship in the [Agreement]."

21  Amended Complaint, ¶ 43(B).  This *argumentum ex silentio* fails. The absence of disclaimers

22  saying the Agreement is not a joint venture does not lead to the conclusion that the Agreement

23  therefore must be a joint venture.

24        Accordingly, Biodata fails to allege any of the elements of a joint venture, and the Court

25  should dismiss Biodata's first claim for declaratory relief for failure to state a claim.

26        **D.    Biodata's 15th Claim For Relief For Fraud Should Be Dismissed For Failure**

27             **To State a Claim**

28        Biodata fails to state a claim for fraud because single words from unattached emails and

1    the conclusions contained in the Amended Complaint do not allege fraud with the requisite

2    specificity.

3        Claims sounding in fraud or mistake must comply with the heightened pleading standard

4    of Rule 9(b) of the Federal Rules of Civil Procedure, which requires that a complaint "state with

5    particularity the circumstances constituting fraud or mistake," including "an account of the time,

6    place, and specific content of the false representations as well as the identities of the parties to the

7    misrepresentations." *Swartz v. KPMG LLP,* 476 F.3d 756, 764 (9th Cir. 2007) (internal citation

8    omitted); *see also Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003)

9    (averments of fraud must be accompanied by "the who, what, when, where, and how of the

10   misconduct charged").   Biodata's 15th claim for relief should be dismissed for failing to meet

11   Rule 9(b)'s heightened pleading standard.

12       Biodata first alleges that Pearl misrepresented the Agreement as a loan when Pearl

13   employee Karen Saunders used the term "collection" in a November 23, 2016 email to Biodata.

14   Amended Complaint, ¶ 112(C). This email is unattached, and the reader is unable to ascertain the

15   context in which this word was used.  This allegation does not state a misrepresentation, only the

16   use of the word "collection" in an email.

17       After making this strained argument, Biodata then lists pages of conclusory allegations

18   regarding Pearl's alleged misrepresentations.  Amended Complaint, ¶¶ 112(D)-114.  The rest of

19   Biodata's conclusory allegations fail to meet the requisite who, what, when, where, and how of

20   Rule 9(b)'s heightened pleading standard for fraud.

21       Importantly, Biodata does not plead "who" made the alleged misrepresentations in

22   paragraphs 112(D)-114 of the Amended Complaint, and thus the entire claim fails. When alleging

23   the "who" against a corporation, the plaintiff must specify the agent of the corporation that made

24   the representation.  *Moore v. Kayport Package Express*, 885 F.2d 531, 541 (9th Cir. 1989)

25   ("Rule 9(b) requires that the pleader state the time, place, and specific content of the false

26   representations as well as the identities of the parties to the misrepresentation."). Here, Biodata's

27   complaint alleges a bevy of "misrepresentations" regarding the loans, but does not allege to

28   whom at Pearl (or MSI?) Biodata allegedly spoke. Amended Complaint, ¶¶ 112(D)-114.

1    Furthermore, where a plaintiff merges multiple defendants together without sufficient

2    detail (*i.e.*, Pearl and MSI), the Complaint must allege specifics regarding the purported fraud.

3    *See Morici v. HashFast Techs. LLC*, (N.D. Cal. Feb. 27, 2015, No. 5:14-cv-00087-EJD) 2015

4    U.S. Dist. LEXIS 24251, at *11 (not meeting Rule 9(b)'s standard when "after collectively

5    defining all of the named defendants, including individual defendants Barber and deCastro, as

6    "Hashfast," Plaintiff attributes nearly every fraudulent statement to [] "Hashfast" [] without

7    distinguishing which entity or individual was actually responsible for the misrepresentation.").

8    Here, the Amended Complaint provides no detail regarding MSI and Pearl's relationship, only

9    stating that Biodata "dealt with both Pearl and MSI, a company that was an agent of Pearl

10    regarding the Pearl Loan." Amended Complaint, ¶ 25.  After grouping Pearl and MSI together,

11    Biodata then concludes that the Pearl/MSI amalgamation made an unspecified misrepresentation.

12    Biodata cannot show "how" the alleged representations were fraudulent.  For instance,

13    with regard to the terms of the Agreement, Biodata alleges that Pearl represented "[t]hat daily

14    payment amount would not exceed the lower of $1,399 or 15% of Plaintiff's receipts from its

15    accounts receivable for that day and that the $1,399 daily payment was equivalent to 15% of

16    Plaintiff's average daily gross receipts." Amended Complaint, ¶¶ 112(D)-(E).  Plaintiff fails to

17    allege how these representations are false. These are the objective terms of the Agreement, and

18    any representation by Pearl that these terms applied cannot be a *mis*representation because such a

19    representation would be true.

20    Biodata did not plead "what" these alleged misrepresentations were in the Amended

21    Complaint.  By example, Biodata vaguely alleges without any facts that Pearl failed "to make

22    federal and state mandated disclosures," and represented that "the loan complied with all

23    applicable laws." Amended Complaint, ¶ 112(G)-(H). These vague and conclusory allegations do

24    not comply with Rule 9(b)'s heightened pleading standard for fraud.

25    Biodata also completely fails to allege "when" or "how" the alleged misrepresentations

26    occurred.  Amended Complaint, ¶¶ 112(D)-114. Biodata simply lists alleged misrepresentations

27    and does not specify when they were made, or whether they were made in person, over the

28    telephone, spoken, or written.  Such detail is not only required by Rule 9(b) but necessary for

1  Pearl to form a responsive pleading.

2         Biodata fails to allege the "who", "when", "what", and "how" as to any of the alleged

3  misrepresentations regarding the Agreement, and thus fails to state a claim for relief under

4  Rule 9(b).

5         **E.    Biodata's 3rd, 4th, 9th, and 10th Claims Should Be Dismissed for Failure To**

6                **State a Claim**

7         Biodata's 3rd, 4th, 9th, and 10th claims for relief all seek to avoid a purported lien. However,

8  these claims should be dismissed for failure to state a claim because it is undisputed that Pearl

9  holds no lien, as shown by the proof of claim attached to the Amended Complaint. *See* Amended

10  Complaint, Exh. B. Thus, these claims have no basis and must be dismissed.

11        **F.    Biodata's 5th and 6th Claims Should Be Dismissed for Failure To State a**

12               **Claim**

13        Biodata's 5th and 6th claims for avoidance of fraudulent transfer each fail because the

14  Agreement provides that reasonable value was exchanged.

15        Under 11 U.S.C. Section 548,[5] a "trustee may avoid any transfer …. if the debtor

16  voluntarily or involuntarily … received less than a reasonably equivalent value in exchange for

17  such transfer or obligation."   11 U.S.C. § 548(a)(1)(B)(i).   Thus, an essential element of

18  fraudulent transfer is an exchange for less than reasonably equivalent value, an element which is

19  not present in this case.

20        Here, Pearl provided reasonably equivalent value to Biodata in exchange for the payments

21  received under the Agreement, so Biodata cannot state a claim for fraudulent transfer.   The

22  _____

23  [5] Biodata makes two claims for fraudulent transfer, one under Section 548, and the other under
   Section 544.  Section 544 provides that "the trustee may avoid any transfer of an interest of the
24  debtor in property or any obligation incurred by the debtor that is voidable under applicable law."
   11 U.S.C. Section 544(b).   Essentially, Section 544(b) allows a party to bring a state law
25  fraudulent transfer cause of action under the auspices of federal law.  Here, Biodata does not
   explain what state law it applies to find the transfer "voidable under applicable law" in its sixth
26  claim for relief under Section 544(b).  Amended Complaint, ¶¶ 62-65.  Pearl can only assume,
   based on the alleged four-year statute of limitations, that Biodata intends to look to California
27  Civil Code Section 3439.05 which sets the same standard for fraudulent transfer as Section 548:
   that the "Debtor made the transfer or incurred the obligation without receiving a reasonably
28  equivalent value." Cal. Civ. Code §§ 3439.05, 3439.09.

1   Agreement expressly provides that "[Biodata] agrees that the Purchase Price is in exchange for

2   the Receipts pursuant to this Agreement, and that it equals the *fair market* value of such

3   Receipts."  Amended Complaint, Exh. A, § 1.10 (emphasis added).  Thus, by the terms of the

4   Agreement, Pearl paid fair market value – *i.e.*, reasonably equivalent value – for the purchased

5   receipts, so Biodata cannot state a claim for fraudulent transfer.

6          **G.      Biodata's 2nd Claim Should Be Dismissed for Failure To State a Claim**

7          Biodata's 2nd claim for avoidance of preferential transfer should be dismissed because the

8   Amended Complaint acknowledges that these payments fall within an exception to 11 U.S.C.

9   Section 547.

10         Under 11 U.S.C. Section 547, a trustee may void transfers from a debtor to a creditor

11  made within 90 days before the filing of bankruptcy.  *See* 11 U.S.C. Section 547(b).  However,

12  Section 547(c)(1) provides an exception to this rule when payments are made "in the ordinary

13  course of business or financial affairs of the debtor and the transferee, and such transfer was -

14  (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or

15  (B) made according to ordinary business terms;."  *Id.* at 547(c)(2).  This test has been interpreted

16  in the Ninth Circuit to have a subjective and an objective part so that, "[t]o qualify for the

17  'ordinary course' exception, a creditor must prove that:  (1) the debt and its payment are ordinary

18  in relation to past practices between the debtor and this particular creditor; and (2) the payment

19  was ordinary in relation to prevailing business standards."  *In re Food Catering & Housing, Inc.*

20  (9th Cir. 1992) 971 F.2d 396, 398.  The legislative notes on this section explain that, "[t]he

21  purpose of this exception is to leave undisturbed normal financial relations, because it does not

22  detract from the general policy of the preference section to discourage unusual action by either

23  the debtor or his creditors during the debtor's slide into bankruptcy."   (11 U.S.C. § 547

24  (LexisNexis, Lexis Advance through PL 115-30, approved 4/28/17).)

25         Here, the payments made to Pearl under the Agreement were subjectively made during the

26  ordinary course of business between the parties, and were objectively ordinary in relation to

27  prevailing business standards in the merchant cash advance business.  Thus, Biodata cannot state

28  a claim for avoidance of preferential transfer.

According to Biodata's allegations and the terms of the Agreement, payment under the Agreement "was to be repaid in the total amount of $167,880 in 120 equal installments of $1,399." Amended Complaint, ¶ 23. Furthermore, these payments are "made on a daily basis in the same amount…" *Id.* at 39(C). Such regular payments by a business, made pursuant to a financing agreement, are undoubtedly incurred and made "within the regular course of business." These payments were not aberrations made haphazardly during Biodata's slide into bankruptcy, but contracted, planned, and ordinary payments made pursuant to a financing agreement between the parties.

Furthermore, the payments were made according to the prevailing business standards of merchant cash advance companies. Biodata's Amended Complaint explains that typically merchant cash advance companies provide funds to clients and then require that "payments [in return be] collected on a daily basis by automatic Electronic Fund Transfers or Automated Clearing House debits (together "EFT"). Amended Complaint, ¶ 14. Thus, according to Biodata's own allegations, such daily payments are typical in merchant cash advance relationships, and such payments fall within Section 547(c)'s exception.

### H.    Biodata's 8th Claim Should Be Dismissed for Failure To State a Claim

Biodata's 8th claim for permanent injunction should be dismissed because Biodata fails to allege facts warranting a permanent injunction. Though bankruptcy courts are given broad equitable powers "to issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]," Biodata fails to allege any facts as to why the Court should enjoin the enforcement of the Agreement. 11 U.S.C. § 105(a). Since all of Biodata's other claims for relief as to the Agreement fail, so too does their claim seeking to enjoin the Agreement's enforcement.

### III.    CONCLUSION

This Court permitted Biodata a second opportunity to state a claim consistent with the Order dismissing each and every claim of the original Complaint. Biodata failed to do so and

//

//

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 28734081V6

1    disregarded this Court's Order.   Accordingly, Pearl respectfully requests that the Court grant

2    Pearl's motion to dismiss without leave to amend.

3

4    DATED: June 14 , 2017                          BUCHALTER
                                                     A Professional Corporation
5

6

7                                                    By: /s/ Valerie Bantner Peo
                                                     _____
8                                                            VALERIE BANTNER PEO
                                                            Attorneys for Defendant
9                                                        PEARL BETA FUNDING, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28